[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 385.]

CINCINNATI BAR ASSOCIATION *v.* ADJUSTMENT SERVICE CORPORATION, D.B.A.

CINCINNATI CREDIT COUNSELING.

CINCINNATI BAR ASSOCIATION *v.* FUQUA.

CINCINNATI BAR ASSOCIATION *v.* CLAPP & AFFILIATES FINANCIAL SERVICES,

INC.

[Cite a*s Cincinnati Bar Assn. v. Adjustment Serv. Corp.*, 2000-Ohio-204.]

*Unauthorized practice of law—Validity of subpoenas issued by the Board of*
*Commissioners on the Unauthorized Practice of Law of the Supreme*
*Court—Respondents' motions to quash subpoenas granted.*

(Nos. 98-664, 98-666 and 99-1007—Submitted April 10, 2000—Decided August
9, 2000.)

ON MOTIONS TO SHOW CAUSE and MOTIONS TO QUASH SUBPOENAS DUCES

TECUM.

————————————

{¶ 1} These three matters involve the validity of subpoenas issued by the
Board of Commissioners on the Unauthorized Practice of Law of the Supreme
Court ("board").

{¶ 2} Based upon complaints that it received in 1995, 1996, and 1997,
relator, Cincinnati Bar Association, initiated investigations regarding the
unauthorized practice of law by three respondents, Adjustment Service Corp., d.b.a.
Cincinnati Credit Counseling ("Adjustment"), Jerry D. Fuqua ("Fuqua"), and Clapp
& Affiliates Financial Services, Inc. ("Clapp"). In the course of its investigations,
the relator requested that the board issue subpoenas *duces tecum* to each respondent.

{¶ 3} After the subpoenas were issued and served on respondents
Adjustment and Fuqua, through their counsel, they refused to comply, stating that
the subpoenas were outside the scope of Section 12, Gov.Bar R. VII.

**{¶ 4}** After the subpoena was served on respondent Clapp, the company, by "Robert D. Clapp, Non Party Witness, Pro Se Litigant," served a motion to quash on relator, claiming that the subpoena was invalid because it did not contain certain language specified in Civ.R. 45(A)(1)(c).

**{¶ 5}** Relator then filed motions in this court on April 7, 1998, with respect to Adjustment and Fuqua, and on May 26, 1999, with respect to Clapp. Each motion requested that this court order each respondent to show cause why he or it should not be punished for contempt for failing to comply with the board's subpoena. We granted the motions and issued orders to show cause on May 27, 1998, and August 11, 1999, respectively.

**{¶ 6}** On June 16, 1998, in response to our order to show cause, *Adjustment* and *Fuqua* each filed a motion to quash the subpoena. Adjustment and Fuqua each also filed a response arguing that the subpoena was invalid. They argued that the subpoena violated the privacy rights of third parties who relied on the confidentiality of the information they provided to Adjustment and Fuqua, that relator did not show the relevancy of the information sought, and that the board has no power to issue a subpoena. Finally, they argued that the subpoena was defective because it did not contain the language required by Civ.R. 45(A)(1)(c). On August 5, 1998, we issued an order to relator to show cause why its contempt motions against Adjustment and Fuqua should not be dismissed.

**{¶ 7}** Relator filed a response to the show cause order in the Adjustment and Fuqua cases on August 25, 1998, and the board filed a brief as *amicus curiae* to which relator, Adjustment, and Fuqua filed answers.

**{¶ 8}** On June 7, 1999, in response to our order to show cause why it should not be held in contempt, Clapp filed a motion to quash the board's subpoena and a response. Relator replied with a motion to strike both Clapp's motion to quash and Clapp's responsive pleading because they were signed by a nonattorney on behalf of a corporation. Clapp then moved for a hearing on the matter. By order dated

2

August 11, 1999, we denied Clapp's motion to quash and motion for a hearing, denied relator's motion to strike,[1] and ordered that respondent show cause why it should not be held in contempt for failure to respond to the subpoena.  On August 30, 1999, Clapp filed a response to the order to show cause.

––––––––––––––––––

*Droder & Miller Co., L.P.A.,* and *W. John Sellins;* and *Maria C. Palermo,* for movant Cincinnati Bar Association in case Nos. 98-664 and 98-666.

*Strauss & Troy* and *Steven F. Stuhlbarg,* for movant Cincinnati Bar Association in case No. 99-1007.

*Norman A. Murdock,* for respondents Adjustment Service Corp. and Jerry D. Fuqua.

*Robert D. Clapp, pro se;* and *Jim Rimedio*, for respondent Clapp & Affiliates Financial Services, Inc.

*Frederick L. Ransier*, urging dismissal for *amicus curiae*, Board of Commissioners on the Unauthorized Practice of Law in case Nos. 98-664 and 98-666.

––––––––––––––––––

*Per Curiam.*

**{¶ 9}** At the outset we note that the Board of Commissioners on the Unauthorized Practice of Law ("board") was created under the Rules for the Government of the Bar in furtherance of this court's constitutional power to regulate all matters relating to the practice of law.  Section 2(B)(1)(g), Article IV, Ohio Constitution.  By Gov.Bar R. VII, we delegated broad powers to the board to investigate entities alleged to have been engaged in the unauthorized practice of law.  Section 4 of Gov.Bar R. VII states that a bar association's unauthorized-

––––––––––––––––––

1. To bring these matters before the court, we initially denied relator's motion to strike Clapp's responses.  We do not by that ruling imply or indicate that a corporation may be represented by a nonattorney.

practice committee "shall investigate * * * any matter referred to it or that comes to its attention and may file a complaint pursuant to this rule." Gov.Bar R. VII(12) provides that the board may issue subpoenas upon application by Disciplinary Counsel in furtherance of its investigations. Section 12 further provides, "All subpoenas shall be issued in the name and under the Seal of this Court and shall be signed by the Secretary and served as provided by the Rules of Civil Procedure." Gov.Bar R. VIII(17) provides, "This rule and regulations relating to investigations and proceedings involving complaints of unauthorized practice of law shall be liberally construed for the protection of the public, the courts, and the legal profession * * *."

{¶ 10} Under Gov.Bar R. VII, the board issued subpoenas to Adjustment, Fuqua, and Clapp.

{¶ 11} Adjustment and Fuqua argue that Section 12 of Gov.Bar R. VII does not provide a method to challenge a board subpoena and therefore the board has no power to issue one. They also contend that there is neither a forum in which to challenge a board's subpoena, nor, since no case number was assigned to the subpoena, a case in which a motion to quash might be filed.

{¶ 12} However, in order to protect the public, we created a procedure both to investigate the unauthorized practice of law and to protect those being investigated. Gov.Bar R. VII clearly contemplates that the board may issue a subpoena before a formal complaint is filed. As the Supreme Court of Kansas noted, "General tenets of administrative law recognize that an agency charged with investigatory duties to ferret out violations of the law can issue subpoenas and make such investigations, even though no formal administrative hearing be pending." *Yellow Freight Sys., Inc. v. Kansas Comm. on Civ. Rights* (1974), 214 Kan. 120, 123-124, 519 P.2d 1092, 1095, relying on *United States v. Morton Salt Co.* (1950), 338 U.S. 632, 642, 70 S.Ct. 357, 364, 94 L.Ed. 401, 411. We conclude, therefore, that a case need not be pending, nor a case number assigned, for the board to issue

a subpoena in furtherance of its duty to protect the public from the unauthorized practice of law.

**{¶ 13}** The entity being investigated is also protected. Reading Gov.Bar R. VII(12) to effect our intent to protect the public, we reject relator's contention that it incorporates the Rules of Civil Procedure only with respect to the service of a subpoena. We find that the Rules of Civil Procedure apply to these proceedings where appropriate, that under those rules a subpoena includes a *subpoena duces tecum*, and that Civ.R. 45(C) provides an adequate process to challenge the board's subpoenas. Civ.R. 45(C)(2)(b) reads:

"[A] person commanded to produce under * * * this rule may, within fourteen days after service of the subpoena or before the time specified for compliance if such time is less than fourteen days after service, serve upon the party or attorney designated in the subpoena written objections to production. If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production."

**{¶ 14}** Accordingly, if the subpoenaed entity refuses to comply, that party must express all written objections to the party serving the subpoena. The party that served the subpoena then has the responsibility to file a motion to compel production with "the court by which the subpoena was issued." Because this court created the board to handle matters arising from the unauthorized practice of law and because the board acts as an enforcement arm of this court, the board has the authority to hear challenges to subpoenas it has issued and make determinations regarding motions to compel production as provided in Civ.R. 45(C). Thus, a method does exist to challenge a subpoena before the board.

{¶ 15} However, we have not specifically delegated to the board the authority to hold in contempt an entity that refuses to comply with a valid subpoena. That power is reserved to the courts. As the United States Supreme Court noted in *Interstate Commerce Comm. v. Brimson* (1894), 154 U.S. 447, 485, 14 S.Ct. 1125, 1136, 38 L.Ed. 1047, 1060, overruled in part on other grounds, *Bloom v. Illinois* (1968), 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, "the power to impose fine or imprisonment in order to compel the performance of a legal duty imposed by the United States can only be exerted * * * by a competent judicial tribunal * * *." The ability to penalize disobedience of judicial orders is an inherent power, "essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. United States ex rel. Vuitton et Fils S.A.* (1987), 481 U.S. 787, 796, 107 S.Ct. 2124, 2131-2132, 95 L.Ed.2d 740, 751. See, also, *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 194, 9 OBR 505, 507, 459 N.E.2d 870, 873. The board, having been created by rule, has no inherent power to hold in contempt, just as a tribunal created by statute is confined to its statutory powers and has no inherent powers. See *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2000), 87 Ohio St.3d 363, 367-368, 721 N.E.2d 40, 44.

{¶ 16} Therefore, if the board grants a motion to compel and respondent fails to comply with the subpoena, relator must file a motion in this court for the respondent to show cause why it should not be held in contempt. Conversely, if the board quashes the subpoena and relator continues to seek production, relator must appeal the board's determination to this court. In either situation, the board's decisions with respect to subpoenas can be enforced only by application to this court.

{¶ 17} Respondents Adjustment and Fuqua also argue that they should not be compelled to comply with the board's subpoenas *duces tecum* because in requesting "financial statements for each client served," the subpoenas invade the

6

privacy rights of third parties who have disclosed their financial affairs to Adjustment and Fuqua. However, Adjustment and Fuqua do not claim any attorney-client privilege or other privilege that would protect such information. Moreover, the information requested through the subpoenas has a rational relation to the board's mission. Persons provide information at their own risk to entities that are not legally immune from disclosing it in an investigation whose purpose is to protect the public. We find that, in the absence of a specific applicable privilege or statutory immunity, the right of privacy does not protect the disclosure of third-party information to a body whose duty is to protect the public from the unauthorized practice of law.

{¶ 18} Respondents Adjustment and Fuqua state that the subpoenas are invalid because they fail to disclose the relevancy of the items requested. On the contrary, the kind of financial information received by respondents is clearly relevant in determining how respondents served their clients and whether respondents were engaging in the unauthorized practice of law.

{¶ 19} Finally, respondent Robert Clapp, *pro se*, joins respondents Adjustment and Fuqua in contending that the subpoenas issued to them by the board cannot be enforced because they do not comply with Civ.R. 45(A)(1)(c). That rule mandates that "[e]very subpoena shall * * * set forth the text of divisions (C) and (D) of this rule." Those divisions provide information regarding the protection of parties subject to subpoenas and the duties of parties responding to subpoenas. We agree with respondents that compliance with Civ.R. 45(A)(1)(c) is not optional. By stating that all subpoenas "shall" set forth the identified text, the rule is mandatory. Moreover, as we noted earlier, the rule must be interpreted liberally to protect the public. These provisions of Civ.R. 45 incorporated by Gov.Bar R. VII(12) are necessary for that protection. We find, therefore, that in the form which they were served, the subpoenas were invalid.

{¶ 20} We therefore deny the relator's motions to show cause why the respondents should not be held in contempt and grant the respondents' motions to quash the subpoenas.

*Judgments accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

––––––––––––––––