DECISION
{¶ 1} Relator, Rodger K. Galbraith, has filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order finding that relator had been overpaid temporary total disability ("TTD") compensation and living maintenance benefits from February 18, 2000 through February 2, 2001, in the amount of $27,594.96, and that determined relator had fraudulently received said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that relator's request for a writ of mandamus be denied. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, asserting the following: the Ohio Bureau of Workers' Compensation ("BWC") is required to comply with Civ.R. 45; an affidavit of relator, and testimony regarding the content of that affidavit should have been suppressed or not admitted into evidence; the affidavit of relator violated the rules of evidence and Ohio notary rules; and, the magistrate failed to apply correct principles of workers' compensation law with respect to a claimant engaged in work while receiving TTD compensation.
 {¶ 4} The relevant facts indicate that relator suffered a work-related injury on February 17, 2000, while employed by respondent-employer, Julian Speer Company ("employer"). A claim was allowed for "sprain lumbar region," and relator received TTD compensation and living maintenance benefits for the period of February 18, 2000 through February 2, 2001. The BWC began an investigation regarding whether relator was engaged in self-employment as a heating, ventilation and air conditioning ("HVAC") system installer during the time he was receiving TTD compensation.
 {¶ 5} The BWC issued subpoenas duces tecum to Key Bank, relator's HVAC suppliers, and Patricia Galbraith, relator's wife. Further, on January 26, 2001, Mike Cave, a BWC investigator, interviewed relator. Following the interview, Cave summarized his discussion with relator in an "affidavit," signed by relator and notarized by Cave, a notary public. The affidavit included the following statements by relator:
* * * I understand that I am not allowed to work. I have my own business, Galbraith Heating Cooling. I have had this company since about 1994/1995. I am the only installer in my business. I have worked this business since it began and have continued to work until present with the exception of my time in the Hospital following my injury. Since 2/00 I have continued to work my business, Repairing/installation of Heating and Air Conditioning equipment (Furnaces Air Conditioners). I understand this employment will be in conflict with my BWC disability. I knew I should not have done this but felt I had to work. I never advised my doctor, BWC or my Attorney that I was working while collecting BWC benefits. I understand that my actions may have resulted in an overpayment in BWC benefits and I will put forth an effort to pay the money back to BWC. * * *
 {¶ 6} The BWC subsequently issued an order, finding that relator had concealed his work activities, misrepresented his continued work on TTD applications, and committed civil fraud, thus declaring an overpayment in the amount of $27,594.96. Relator appealed the BWC's order, and a district hearing officer ("DHO") issued an order finding relator had been overpaid TTD compensation and living maintenance benefits. Relator appealed the DHO's order, and filed motions to quash and to suppress relator's affidavit, the bank records and HVAC supply accounts. A pre-hearing conference was held, and a hearing administrator denied relator's motions.
 {¶ 7} Following a hearing, a staff hearing officer ("SHO") issued an order finding that relator had been overpaid and that he had committed fraud. The SHO noted in the order that relator had refused to testify at the hearing. The commission refused a further appeal by relator.
 {¶ 8} In his first objection, relator contends that the magistrate erred in failing to find that the BWC is required to comply with Civ.R. 45(A)(1)(c), which provides that every subpoena shall "set forth the text of divisions (C) and (D) of this rule." We note that division (C) of Civ.R. 45 provides for "[p]rotection of persons subject to subpoenas," while division (D) of the rule sets forth certain "[d]uties in responding to subpoena[s]." Relator maintains that the failure to include the language in divisions (C) and (D) to the subpoenas issued rendered them invalid.
 {¶ 9} In general, the civil rules apply to the courts of the state and, absent statutory authority, administrative agencies are not bound by strict adherence to civil rules. Vaughn v. State Med. Bd. (Aug. 6, 1991), Franklin App. No. 90AP-1160, citing Civ.R. 1. Significantly, as noted by the magistrate, R.C. 4123.10 provides, as follows:
The industrial commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as provided in sections 4123.01 to 4123.94, inclusive, of the Revised Code, but may make an investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of such sections.
 {¶ 10} In LTV Steel Co. v. Indus. Comm. (2000), 140 Ohio App.3d 680,691, this court construed the language of R.C. 4123.10 as demonstrating that: "(1) the Industrial Commission is not bound by the discovery rules found in the Ohio Rules of Civil Procedure, and (2) the legislature has granted broad discretion to the Industrial Commission to implement its own rules to carry out the provisions of the Workers' Compensation Act."
 {¶ 11} In the present case, the subpoena duces tecum issued by the investigator indicates that it was issued "pursuant to Ohio Revised Code4121.13 and 4121.15." R.C. 4121.13(F) provides that the administrator of workers' compensation shall "[i]nvestigate all cases of fraud or other illegalities pertaining to the operation of the workers' compensation system and its several insurance funds and for that purpose, the administrator has every power of an inquisitorial nature granted to the industrial commission in this chapter and Chapter 4123. of the Revised Code[.]"
 {¶ 12} R.C. 4121.15 states as follows:
The administrator of workers' compensation and his designees, for the purposes mentioned in sections 4121.01 to 4121.29 of the Revised Code may administer oaths, certify to official acts, issue subpoenas, and compel attendance of witnesses and the production of papers, books, accounts, documents, and testimony. In case of the failure of any person to comply with any order of the bureau of workers' compensation or any subpoena lawfully issued, or upon the refusal of any witness to testify to any matter regarding which he may be lawfully interrogated, the judge of the court of common pleas of any county in this state, on the application of the bureau, shall compel obedience by attachment proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from the court or a refusal to testify therein.
 {¶ 13} Relator maintains that the above language mandates that BWC subpoenas meet the requirements of a subpoena issued by the court of common pleas. However, we agree with respondents that, while R.C. 4121.15
confers upon the courts of common pleas' authority to enforce a BWC subpoena the same as if the court had issued the subpoena, the statute merely addresses the issue of non-compliance and does not adopt Civ.R. 45 by reference. Rather, analogous to other administrative proceedings granting an agency the power to investigate, the purpose of the statute is to allow, "on the application" of the agency, a summary proceeding, rather than requiring a summons under the rules of civil procedure. Stateex rel. Civil Rights Comm. v. Gunn (1975), 47 Ohio App.2d 149. In such cases, a petition to enforce a subpoena "is one where a rule may be employed rather than process," and in which the agency "merely seeks the aid of the court to enforce compliance with its subpoena." Id. at 153.
 {¶ 14} In further support of his contention that the subpoenas were invalid, relator relies upon Cincinnati Bar Assn. v. Adjustment Serv.Corp. (2000), 89 Ohio St.3d 385. That case, however, involved the validity of subpoenas issued by the Board of Commissioners on the Unauthorized Practice of Law ("board"). As noted in that case by the Supreme Court, that board was created under the Rules for the Government of the Bar. Section 12 of Gov.Bar R. VII specifically provides that "[a]ll subpoenas shall be * * * served as provided by the Rules of Civil Procedure." In contrast, there is no comparable provision requiring the commission to issue subpoenas in strict compliance with the civil rules; rather, pursuant to R.C. 4123.10, the commission is not bound by strict rules of procedure. LTV Steel, supra. Accordingly, because adherence to technical or formal rules of procedure is not required, the magistrate did not err in failing to find that the subpoenas issued by the BWC were invalid.
 {¶ 15} Under his second objection, relator contends that his affidavit, prepared by BWC investigator Cave following the interview with relator, should not be admitted based upon "the fruit of the poisonous tree" doctrine. Relator's argument is premised upon his contention, addressed above, that the subpoenas were invalid, and, thus, documentation gathered by those documents was invalid. In light of our disposition of the first objection, relator's argument under his second objection is without merit. Further, as aptly noted by the magistrate, relator does not deny he was interviewed by Cave or that he made the statements at issue, and, even assuming the subpoenas had been invalid, the investigator could have still testified as to those matters. As also noted by the magistrate, a review of Cave's testimony does not mention documents obtained through the subpoenas.
 {¶ 16} Relator's contention, under his third objection, that the affidavit at issue violated various rules of evidence is without merit. See R.C. 4123.10; State ex rel. Roberts v. Indus. Comm. (1984),10 Ohio St.3d 1, 4-5 (Industrial Commission properly considered affidavit submitted by employer regardless of whether it strictly complied with evidentiary rules relating to personal knowledge and hearsay; "by virtue of R.C. 4123.10, the commission is vested with the authority to admit and consider materials of a quasi-evidentiary nature"); Baker v. Indus.Comm. (1933), 44 Ohio App. 539, 549 (Industrial Commission has discretion to ascertain truth of claim by what it considers to be reliable evidence, "whether it be hearsay or otherwise").
 {¶ 17} Relator further contends that the affidavit was in violation of rules governing notaries public because the investigator was permitted to both draft the statement relator signed and to notarize the affidavit. Relator asserts in general that the affidavit violated R.C.147.01 to 147.12. In considering this argument, the magistrate correctly noted that none of those provisions specifically address who should draft an affidavit, or how an affidavit is to be drafted. Further, even assuming relator had shown a violation of Ohio's notary laws, we have previously noted that the investigator was permitted to testify before the commission as to the conversation at issue, and, thus, we agree with the magistrate that this information would have been before the commission with or without the affidavit.
 {¶ 18} In his final objection, relator argues that, even if he did work, the evidence did not demonstrate that his activities were medically inconsistent with his disability as an HVAC installer. We disagree. The magistrate noted that relator's statement to the investigator that he worked, as set forth in the affidavit, was some evidence to support a finding that he was not entitled to TTD compensation. The investigator testified at the commission hearing that relator told him during the interview that he was working during the period of disability, and that he was the only installer in his business. Upon review, we conclude that the magistrate did not err in finding that there was some evidence before the commission that relator was working during the time he was receiving TTD compensation and living maintenance benefits. See State ex rel. ParmaCommunity Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336, at ¶ 8 (TTD compensation is meant to compensate a claimant for the loss of earnings sustained while the injury heals; thus, such compensation "ceases when a claimant `has returned to work'").
 {¶ 19} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and relator's request for a writ of mandamus is hereby denied.
Objections overruled; writ denied.
Petree, P.J., and Watson, J., concur.
 IN MANDAMUS {¶ 20} Relator, Rodger K. Galbraith, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found that relator had been overpaid temporary total disability ("TTD") compensation as well as living maintenance benefits from February 18, 2000 through February 2, 2001, in the amount of $27,594.96, and in determining that relator had fraudulently received that compensation.
 Findings of Fact {¶ 21} 1. Relator sustained a work-related injury on February 17, 2000, and his claim has been allowed for: "sprain lumbar region."
 {¶ 22} 2. At the time of his injury, relator was employed as an HVAC installer and repair person for respondent-employer Julian Speer Company ("employer").
 {¶ 23} 3. Relator submitted C-84s, certified by his physician of record, Sambhu N. Chaudry, M.D., for the period of February 17, 2000 through January 29, 2001.
 {¶ 24} 4. Relator received TTD compensation and living maintenance benefits during the above time period.
 {¶ 25} 5. The Ohio Bureau of Workers' Compensation ("BWC") began an investigation after receiving information that relator may have continued HVAC installation and repair work as a self-employed individual.
 {¶ 26} 6. As part of the investigation, the BWC sent subpoenas duces tecum to Key Bank, relator's HVAC suppliers, and Patricia Galbraith, relator's wife.
 {¶ 27} 7. The BWC received copies of cancelled checks and deposit slips from the Galbraith Heating Cooling checking account and the joint checking account of relator and his wife showing payments from February 10, 2000 through September 26, 2000 from several individuals and companies for HVAC work. Several of the checks indicate that the money was for work performed and some of the checks drawn on the account indicated that they were for "expenses." The BWC also received order forms from LUTE Supply, a wholesale distributor, who supplied HVAC parts for Galbraith Heating Cooling.
 {¶ 28} 8. On January 26, 2001, Mike Cave, an investigator for the BWC, met with relator. According to Mr. Cave's testimony, relator initially indicated that he wanted his attorney present; however, when relator was unable to reach his attorney, he agreed to talk with Mr. Cave out of his attorney's presence. (Hearing tr. at 60-61.)
 {¶ 29} 9. Following the interview, Mr. Cave summarized the substance of his discussions with relator in an "affidavit" which was signed by relator and which was notarized by Mr. Cave, a notary public. Within that "affidavit," relator made the following statements:
 {¶ 30} "* * * I understand that I am not allowed to work. I have my own business, Galbraith Heating Cooling. I have had this company since about 1994/1995. I am the only installer in my business. I have worked this business since it began and have continued to work until present with the exception of my time in the Hospital following my injury. Since 2/00 I have continued to work my business, Repairing/installation of Heating and Air Conditioning equipment (Furnaces Air Conditioners). I understand this employment will be in conflict with my BWC disability. I knew I should not have done this but felt I had to work. I never advised my doctor, BWC or my Attorney that I was working while collecting BWC benefits. I understand that my actions may have resulted in an overpayment in BWC benefits and I will put forth an effort to pay the money back to BWC. * * *"
 {¶ 31} 10. Based upon the above evidence, the BWC issued an order on May 2, 2001, finding that relator had concealed his work activities and had misrepresented his continued work on his TTD applications. The BWC found that relator had committed civil fraud and declared an overpayment in the amount of $27,594.96.
 {¶ 32} 11. Relator appealed from the BWC's order to the commission citing only the underlying factual findings and not the BWC's evidence.
 {¶ 33} 12. The appeal was heard before a district hearing officer ("DHO") on June 20, 2001, and resulted in an order finding that relator had been overpaid TTD compensation and living maintenance benefits because he was employed with his own company during that time period. The DHO relied upon the records of deposits and checks, as well as relator's affidavit wherein he admitted he had worked during the time period in question and that he was the only individual who performed the installation work.
 {¶ 34} 13. Relator appealed the DHO's order and filed motions to quash and to suppress relator's affidavit, the bank records, and the HVAC supply accounts. A pre-hearing conference was held with a hearing administrator on November 15, 2001, to address relator's motions. By letter dated January 29, 2002, the hearing administrator made the following findings:
 {¶ 35} "It is the finding of the Hearing Administrator that the following provision(s) have been decided upon: The claimant's motions filed 8-8-01 and 9-10-01 to `quash/strike and suppress any and all evidence obtained by the Ohio Bureau of Workers' Compensation' in regards to the pending issue of fraud/overpayment, are hereby denied.
 {¶ 36} "Claimant argued that the BWC obtained evidence from illegal and defective subpoenas. Claimant also argued the BWC obtained affidavits that do not comply with the laws and rules governing notary publics.
 {¶ 37} "Claimant's request to strike evidence are denied in light of ORC 4123.10, which specifically states `the Industrial Commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other that [sic] as provided in sections 4123.01 to 4123.94.' Claimant has not shown that the evidence obtained by the BWC via subpoenas or that the affidavits at issue violate any sections of 4123.01 [to] 4123.94 of the Revised Code."
 {¶ 38} 15. Relator's appeal from the prior DHO order was heard before a staff hearing officer ("SHO") on February 1, 2002, and resulted in an order finding that relator had been overpaid and that he had committed fraud. The SHO relied upon the same records upon which the DHO relied as well as relator's signed statement. The SHO also noted that relator refused to testify at the hearing, and found that relator had concealed the fact that he was working while receiving compensation. The SHO further noted that relator represented to the BWC that he was entitled to TTD compensation by filing his disability statements and by cashing the TTD compensation checks which he received. The SHO found that these actions were material representations which were made intentionally by relator in order that the BWC would rely upon those statements and issue the compensation to relator while he was working. The SHO also found that relator's representation that he was disabled and not working between February 18, 2000 to February 2, 2001, was false and that it was material to the payment of TTD compensation, was intended by relator to cause the BWC to pay him compensation while he was working, and was relied on by the BWC when it paid him improperly as a direct result of his misrepresentation.
 {¶ 39} 16. Further appeal filed by relator was refused by order of the commission mailed February 21, 2002.
 {¶ 40} 17. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 41} In this mandamus action, relator asserts that the subpoenas issued by the BWC to obtain evidence against him are invalid because they do not contain the language required by Civ.R. 45(A)(1)(c); that the information contained in the affidavit of relator constitutes "fruit from the poisoned tree" because it was obtained from relator after Mr. Cave gathered information through illegal subpoenas and because it violates the law to have the notary public draft the statement. Relator also contends that the commission abused its discretion by finding that he was working while receiving TTD compensation and living maintenance benefits in declaring an overpayment. For the reasons that follow, this magistrate recommends that the court deny relator's request for a writ of mandamus.
 {¶ 42} Relator's first two challenges allege the illegality of the subpoenas used to acquire the bank and HVAC supply records and the affidavit containing his confession of fraud. Relator asserts that the evidence obtained should have been excluded from consideration in the administrative proceedings.
 {¶ 43} Relator contends that the BWC is required to comply with Civ.R. 45(A)(1)(c) which provides that every subpoena shall set forth the text of divisions (C) and (D) of this rule. Those provisions provide information regarding the protection of parties subject to subpoenas and the duties of parties responding to subpoenas. For example, Civ.R. 45(C)(2)(b) provides that a person may file written objections to production and that the party serving the subpoena will not be entitled to production of those documents unless the court orders them to do so. Relator contends that, without including the language from Civ.R. 45, the subpoenas served on Key Bank, the HVAC suppliers, and his wife were invalid.
 {¶ 44} Civ.R. 1 makes it clear that the civil rules are to be followed in all courts of the state of Ohio in the exercise of civil jurisdiction law or in equity.
 {¶ 45} However, R.C. 4123.10 provides as follows:
 {¶ 46} "The industrial commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as provided in sections 4123.01 to 4123.94, inclusive, of the Revised Code, but may make an investigation in such manner as in its judgment is best calculated to ascertain the substantial right of the parties and to carry out justly the spirit of such sections."
 {¶ 47} In State ex rel. Roberts v. Indus. Comm. (1984),10 Ohio St.3d 1, the Ohio Supreme Court determined that R.C. 4123.10
grants the commission considerable discretion regarding the evidence which it considers and that the commission is vested with the authority to admit or consider materials of a quasi-evidentiary nature. In that case, the appellant argued that an affidavit should not have been considered by the commission based upon Evid.R. 602 and 801(C), which involve witnesses testifying on matters about which they have no personal knowledge and hearsay. Citing to R.C. 4123.10, the court noted that the considerable discretion granted the commission regarding the evidence which it considers negates the appellant's argument that the affidavit was improperly considered, assuming, arguendo, that Evid.R. 602 and 801(C) apply. Similarly, in LTV Steel Co. v. Indus. Comm. (2000),140 Ohio App.3d 680, this court noted that, generally, due process rights guaranteed by the Federal and State Constitutions apply, to some extent, in the context of administrative law, but that due process is a flexible concept and calls for such procedural safeguards as the particular situation demands. Further, this court noted that the commission is not bound by the discovery rules found in the rules of civil procedure as the legislature has granted broad discretion to the commission to implement its own rules to carry out the provisions of the workers' compensation act. Citing to R.C. 4123.10, this court noted that the discovery generally as provided by the rules of civil procedure in court proceedings is not available in administrative proceedings and that the extent of discovery that a party engaged in an administrative hearing is entitled to is primarily determined by the particular agency.
 {¶ 48} Relator attempts to make Civ.R. 45 applicable to the BWC's administrative subpoenas because of R.C. 4123.512 which permits an appeal to the court of common pleas of a commission order other than a decision as to the extent of disability. Relator argues that evidence is being gathered at the BWC level, then used at the commission level and then ultimately used at the court level. As such, all evidence must comply with all the requirements of the law. However, the instant action is not a case which is subject to appeal pursuant to R.C. 4123.512; otherwise, relator would not be able to bring this mandamus action. Instead, this is a case involving the extent of disability involving whether relator fraudulently received and was overpaid TTD compensation and living maintenance benefits. Relator cites to Cincinnati Bar Assn. v. AdjustmentServ. Corp. (2000), 89 Ohio St.3d 385, and asserts that all subpoenas must meet the requirements of Civ.R. 45. Cincinnati Bar Assn. involved the validity of subpoenas issued by the Board of Commissioners on the Unauthorized Practice of Law of the Supreme Court ("Board'). The Board received complaints and began investigating three entities regarding the unauthorized practice of law. The Board issued subpoenas duces tecum to each of the entities. The entities challenged the subpoenas on various grounds including the fact that the subpoenas did not comply with Civ.R. 45(A)(1)(c). The court found that the Rules of Civil Procedure applied to proceedings where appropriate, that under those rules a subpoena included a subpoena duces tecum, and that Civ.R. 45 applied so that the subpoena could be challenged and that it had to comply with Civ.R. 45(A)(1)(c).
 {¶ 49} Unlike actions before the Board, R.C. 4123.10 specifically provides that the commission is not bound by the usual common law or by statutory rules of evidence or by any technical or formal rules of procedure, other than as provided in R.C. 4123.01 through 4123.94. Contrary to relator's arguments, this does not mean that investigators will be allowed to break into his house and steal documents for an investigation. Because the civil rules do not apply, relator's argument that the subpoenas issued by the BWC to his bank, his HVAC suppliers and his wife were invalid, lacks merit.
 {¶ 50} Relator also contends that his signed confession of fraud should have been excluded. Relator contends that Mr. Cave was not permitted to both draft the statement which relator ultimately signed and notarize that same statement. Relator points to R.C. 147.01 through 147.14
and asserts that a notary public is limited to administering the oath certifying the affidavit. However, after reviewing R.C. 147.01 through147.14, this magistrate cannot find anything addressing the drafting of an affidavit. Specifically, this magistrate found nothing to indicate who should draft an affidavit or how that affidavit is to be drafted. Furthermore, Mr. Cave was permitted to testify as to the conversation which took place between himself and relator, and Mr. Cave did so. Because the commission was permitted to hear this testimony, the information would have been before the commission with or without the affidavit. Furthermore, it is interesting to note that relator does not deny that he had the conversation with Mr. Cave, nor does he deny that he made the statements. Instead, relator merely asserts that Mr. Cave was not permitted to draft and notarize the document. Also, even if the subpoenas were invalid, Mr. Cave still could have testified as to these matters. A review of his testimony includes no mention of the documents obtained through the subpoenas and it cannot be said that any of that information was used to elicit relator's statements during the conversation. This magistrate disagrees and this argument of relator lacks merit as well.
 {¶ 51} Lastly, relator contends that the commission abused its discretion by finding that he was working during the time he was receiving TTD compensation and living maintenance benefits. Relator contends that the income he received from Galbraith Heating Cooling did not constitute evidence that he actually did any of the work. This magistrate disagrees.
 {¶ 52} First, in his affidavit, relator admitted to doing installation work for his company. That, in and of itself, constitutes some evidence that relator was performing work outside his restrictions. Secondly, R.C. 4123.56(A) provides that a claimant is not entitled to payment of TTD compensation for any period in which claimant engaged in work. In State ex rel. Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20,2002-Ohio-7038, at ¶ 19, the Ohio Supreme Court recently stated as follows:
 {¶ 53} "Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. State ex rel. Nye v. Indus. Comm.
(1986), 22 Ohio St.3d 75, 78 * * *. We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. State ex rel. Parma Community Gen. Hosp. v. Jankowski,95 Ohio St.3d 340, 2002-Ohio-2336, * * * at ¶ 15. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id at ¶ 14-15 * * *. Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. State ex rel. Blabac v. Indus.Comm. (1999), 87 Ohio St.3d 113 * * *."
 {¶ 54} Clearly, there was some evidence before the commission that relator was working as defined in Ford Motor Co., and was, therefore, not entitled to receive TTD compensation. As such, this argument of relator fails as well.
 {¶ 55} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by finding that he was working while receiving TTD compensation and living maintenance benefits and relator's request for a writ of mandamus should be denied.
Stephanie Bisca Brooks, Magistrate.