[Cite as *Kehoe v. Kehoe*, 2012-Ohio-3357.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97357

---

## MAURA A. KEHOE

PLAINTIFF-APPELLEE

vs.

## ROBERT D. KEHOE, ET AL.

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court
Domestic Relations Division
Case No. CPD-328835

**BEFORE:** Blackmon, A.J., Jones, J., and S. Gallagher, J.
**RELEASED AND JOURNALIZED:** July 26, 2012

**ATTORNEYS FOR APPELLANT**

Carl A. Murway
Brian E. Ambrosia
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302


**ATTORNEY FOR APPELLEE**

Margaret E. Stanard
Stanard & Corsi Co., L.P.A.
1370 Ontario Street, Suite 748
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** Appellant Robert D. Kehoe appeals the division of property, apportionment of the debt obligation, and spousal support awarded to appellee, Maura A. Kehoe. Appellant assigns the following errors for our review:

> **I. The trial court erred by failing to disburse husband's separate interest in the marital residence to him pursuant to R.C. 3105.171(A)(6)(a)(I) and 3105.171(D).**
>
> **II. The trial court erred by finding that educational loans incurred during the marriage for the benefit of their children, income taxes, and business and personal debts and obligations were not marital debts.**
>
> **III. The trial court erred by awarding wife an unreasonable and inappropriate amount of spousal support, health insurance, mortgage and all other expenses related to the marital home, taxes and other personal and business debts and expenses in amounts that exceed his annual income by at least $75,000, thereby rendering husband insolvent and unable to pay his basic living expenses.**
>
> **IV. The trial court erred by issuing a spousal support order that does not terminate upon husband's death or wife's cohabitation.**
>
> **V. The trial court erred by ordering husband to pay wife's attorney fees, expert witness fees and all court costs, when wife also received more than one-half of net assets and financial obligations imposed by the trial court exceed the husband's entire income, therefore rendering the order inequitable and without basis under R.C. 3105.73.**

**{¶2}** Having reviewed the record and pertinent law, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. The apposite facts follow.

**{¶3}** Appellant and appellee were married on July 24, 1982 and had three children, all of whom are currently emancipated. Appellant is an attorney; his company is Kehoe & Associates, LLC, which he formed in 2004.

**{¶4}** Appellee worked as an administrative assistant at several firms prior to staying at home to raise the children. She has degrees from Marymount and Ursuline Colleges. During the children's teenage years, appellee taught tennis and most recently, worked as a sales assistant at an antiques store.

**{¶5}** On November 6, 2009, appellee filed a complaint for divorce, appellant counterclaimed, and significant motion practice followed. Subsequently, the action was tried on April 11, 12, 13, 14, and 15, 2011, and July 5 and 6, 2011. As to the specific and detailed evidence presented at trial, we will discuss these facts below when addressing the corresponding assignments of error.

**{¶6}** Ultimately, the trial court awarded appellee $3,000 per month in spousal support for ten years, health insurance, and awarded attorney fees of $40,000, plus the cost of a financial expert in amount of $17,510. In addition, the trial court ordered appellant to pay all expenses of the marital residence until it was sold.

## Separate Marital Interest

**{¶7}** In the first assigned error, appellant argues the trial court erred when it failed to disburse his separate interest in the marital residence.

**{¶8}** As a general rule, appellate courts review the propriety of a trial court's determination in a domestic relations case for an abuse of discretion. *Saari v. Saari*, 195

Ohio App.3d 444, 2011-Ohio-4710, 960 N.E.2d 539 (9th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Abuse of discretion is more than simply an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶9} Under R.C. 3105.171(B), the trial court must determine what constitutes marital property and what constitutes separate property. *Burriss v. Burriss*, 4th Dist. Nos. 09CA21, 10CA11, 2010-Ohio-6116. When interpreting statutes and their application, an appellate court conducts a de novo review, without deference to the trial court's determination. *Roberts v. Bolin*, 4th Dist. No. 09CA44, 2010-Ohio-3783, at ¶ 20, citing *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (4th Dist. 1995).

{¶10} In the instant case, appellant testified that his late mother loaned him $30,000 towards the down payment on the marital property. Appellant also testified that his mother died after making the loan and the loan was never repaid. The record before us includes a copy of the promissory note for $30,000 payable to appellant's mother, copy of a check from his mother's account payable to the title company, and a copy his mother's bank ledger indicating that a check for $30,000 was written on appellant's behalf.

{¶11} The party seeking to establish an asset or a portion of it as their own separate property has the burden of proof, ordinarily by a preponderance of the evidence, to trace the asset to the separate property source. *See Eddy v. Eddy*, 4th Dist. No.

01CA20, 2002-Ohio-4345. Here, the evidence established that the $30,000 could be traced to the loan appellant obtained from his mother. Moreover, appellee acknowledged that appellant's mother did in fact loan them the money. At trial, appellee testified as follows:

**Q. When did you buy the house?**

**A. 1998.**

**Q. Handing you what's been marked for identification purposes as Defendant's exhibit MM. I'd like you to look at MM for a second Miss Kehoe. That appears to be a loan that Bob got from his mother, right.**

**A. Yes. I remember vaguely that she gave him $30,000.** Tr. 429-430.

**{¶12}** Given that appellant presented evidence of the separate source of the funds used to aid in the acquisition of the marital home and appellee's testimony confirms that said funds were indeed a loan from appellant's mother, we find the trial court erred by failing to distribute $30,000 to appellant as his separate interest in the marital residence. Appellant presented sufficient, credible evidence that the $30,000 was a loan from his late mother to assist with the down payment on the marital residence. Accordingly, we sustain the first assigned error.

### Student Loan Obligations

**{¶13}** In the second assigned error, appellant argues the trial court erred by failing to find that debt obligation undertaken to educate the parties' college aged children were marital debt.

**{¶14}** A trial court must take into account marital debt when dividing marital property. *Barkley v. Barkley*, 119 Ohio App.3d 155, 169, 694 N.E.2d 989 (4th Dist.1997). Assets and debts incurred during the marriage are presumed to be marital unless it can be proved they are separate. *Vergitz v. Vergitz*, 7th Dist. No. 05 JE 52, 2007-Ohio-1395, at ¶ 12. The party seeking to establish that property (or debt) is separate rather than marital bears the burden of proving this to the trial court. *Id.*, citing *Hurte v. Hurte*, 164 Ohio App.3d 446, 454, 2005-Ohio-5967, 842 N.E.2d 1058 (4th Dist.). The determinative factor is whether the loan was incurred during the marriage. *Nemeth v. Nemeth*, 11th Dist. No. 2007-G-2791, 2008-Ohio-3263.

**{¶15}** In the instant case, the parties incurred approximately $42,583 for their daughter, who attended Fairfield University between 2005 and 2009, prior to the time that appellee filed for divorce, for which appellant currently pays approximately $667 per month. Appellant has undertaken educational debt for the parties' youngest child, who started college after appellee filed for divorce. Appellant is not requesting any assistance from appellee with the student loans taken out after the divorce action was initiated.

**{¶16}** Despite the fact that their children were college-aged when the educational debts were incurred, and we acknowledge that parents have no duty to support emancipated children, the loans were incurred during the marriage to finance the children's education. Having been undertaken during the marriage, the loans should have been treated as any other expenditure of the marriage, and this is a marital debt. Accordingly, we sustain the second assigned error.

## Spousal Support and Division of Property

**{¶17}** In the third assigned error, appellant argues the trial court erred by awarding an unreasonable and inappropriate amount of spousal support.

**{¶18}** In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18(C)(1)(a)-(n). *Deacon v. Deacon*, 8th Dist. No. 91609, 2009-Ohio-2491, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. The goal of spousal support is to reach an equitable result. *Id*. at 96, 518 N.E.2d 1197. And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id*.

**{¶19}** In the instant case, the trial court ordered appellant to pay spousal support in the amount of $3,000 per month, cover the health insurance costs for appellee, pay all expenses of the marital residence until it sold, and pay $17,510 to appellee's experts, Valuation & Litigation Consulting, LLC, within ten days of the decree. As previously discussed, the trial court also ordered appellant to pay all the pre-divorce petition educational loans for the parties' children and any unpaid income taxes.

**{¶20}** In addition, the trial court ordered appellant to pay appellee's attorney fees in the amount of $40,000, according to the following schedule: $10,000 on or before December 1, 2011, $10,000 on or before June 1, 2012, $10,000 on or before December 1, 2012, and $10,000 on or before June 1, 2013.

**{¶21}** Appellant argues the above obligations exceeds his annual income by more than $75,000 per year. The trial court stated in the divorce decree that the primary issue throughout the proceedings was the establishment and identification of appellant's true income. The trial court specifically stated that "Defendant claims that he currently earns $85,000 annually [Plaintiff's Exhibit 19], however, Defendant deposited a total of $119,706 into his personal account from January 15, 2010 through January 14, 2011 [Plaintiff's Exhibits 21 and 22] to support a finding of his earnings at $120,000 per year."

**{¶22}** Appellant argues it was unreasonable and inappropriate for the trial court to find that his income was $120,000 per year despite evidence that the parties' joint tax returns for the preceding four years reflect net income of $76,821 in 2006, $101,938 in 2007, $7,952 in 2008, and $91,306 in 2009. Appellant presented evidence that the parties' 2006 tax return was audited by the Internal Revenue Service ("IRS") and in the process, all four tax years were reviewed, and the IRS left the returns intact.

**{¶23}** In addition, Douglas Heiser, CPA, who prepared the parties' returns, testified that all four tax returns were prepared in the same manner as Tax Year 2006, which survived the IRS audit. Heiser testified that the IRS agent spent a whole day examining the firm's income and expenses, but found nothing to justify changing the returns.

**{¶24}** Further, appellant explained that the additional deposits reflected in his personal checking account came from loans against his pension plan, credit card advances, and withdrawals from an inheritance account, which is almost exhausted. Tr.

564.   Appellant stated that overdraft protection averaging approximately $400 per month contributed to the additional deposits into the checking account.

**{¶25}**   Finally, appellant testified that they were spending more than he was making, he implored appellee to return to work full-time after the children were teenagers, but she refused.  Appellant cited to the fact that he had to put one of their vehicles up for sale in order to pay the youngest child's private school tuition, so that the child could graduate from high school.

**{¶26}**   Notwithstanding the above evidence, including joint income tax returns that survived the scrutiny of the IRS, the trial court found appellant's income to be $120,000.   Our review of the record indicates that even with the trial court's finding that his yearly income was $120,000, the obligation ordered far exceeds his ability to pay.

**{¶27}**   To recap, in the first year of the order, appellant is required to pay appellee's attorney's fees of $40,000 and $17,510 in fees for a forensic financial expert, who billed for 88 hours of work, but presented no testimony, spousal support of $36,000, plus an undetermined cost for appellee's health insurance. Appellant is required to pay all household expenses for the marital residence until sold.   Appellant testified that the mortgage payment was $3,150 per month or $37,800 per year, and the family's health insurance cost is $3,147 per month or $37,764 per year.

**{¶28}**   Here, appellant's obligation in the first year of the trial court's order totals $169,074, without accounting for utilities, property taxes, income taxes, food, and other normal everyday expenses.   In addition, appellant is responsible for his own attorney

fees. At a glance, appellant's obligation in the first 12 months easily exceeds the imputed income of $120,000 by more than $50,000. As such, an equitable result has not been reached, appellant will not be able to comply with the order, and we suspect, in the future, appellant will be subject to contempt findings for failure to comply with an impossible task.

{¶29} Accordingly, we sustain the third assigned error and order the trial court to re-evaluate the evidence in light of the foregoing to achieve a more equitable result.

### Spousal Support Obligation Beyond Husband's Death

{¶30} In the fourth assigned error, appellant argues the trial court erred by issuing a support order that continues after his death and appellee's cohabitation.

{¶31} R.C. 3105.18(B) permits a trial court to award reasonable spousal support incident to a divorce action. *Crouso v. Crouso*, 3d Dist. No. 14-02-04, 2002-Ohio-3765, ¶ 15. This statute includes the following:

> **In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. * * * Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.**

{¶32} Thus, the general rule is that spousal support awards should terminate upon a date certain, in order to place definitive limit on the parties' rights and responsibilities. *Bowen v. Bowen*, 132 Ohio App.3d 616, 725 N.E.2d 1165 (9th Dist. 1999). In the instant case, the trial court's order provided that the spousal support shall terminate upon

Maura's death, remarriage, or 120 months, whichever shall first occur. Central to the issue at hand is that the court's order was also binding on appellant's estate.

{¶33}    In support of her argument that the spousal support should remain binding on appellant's estate, appellee cites *Millstein v. Millstein*, 8th Dist. Nos. 79617, 79754, 80184, 80185, 80186, 80187, 80188, 80963, 2002-Ohio-4873, a case in which we upheld an order that was binding on the obligor's estate. However, *Millstein* is distinguishable from the present case.

{¶34} Both cases involve marriages of long duration, both involved mothers that were primarily homemakers, but unlike the present case, there was a significant age difference in *Millstein*. In *Millstein*, we stated: plaintiff is 49 years of age. Defendant is 72 years of age. Both are in good physical, mental and emotional health. Because of the age difference, the spousal support order shall be binding on defendant's estate.

{¶35}   In addition, Mr. Millstein had a net worth in excess of $120 million, which is not the case here. As such the trial court erred by making the spousal support binding on appellant's estate. As it relates to terminating the order upon appellee's cohabitation, this issue can be addressed if that occurs. As previously stated, the trial court's order provides for termination if appellee remarries. Accordingly we sustain in part, overrule in part the fourth assigned error, and instruct the trial court to delete the portion of the order, which makes it binding on appellant's estate. As it stands, if appellant dies within ten years, the parties' children would be paying the spousal support to their mother.

**Attorney Fees**

{¶36}    In the fifth assigned error, appellant argues the trial court erred when it ordered him to pay appellee's attorney fees, expert witness fees, and all court costs.

{¶37}    An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *McEnery v. McEnery*, 10th Dist. No. 00AP–69, 2000 WL 1863370 (Dec. 21, 2000), citing *Goode v. Goode*, 70 Ohio App.3d 125, 590 N.E.2d 439 (10th Dist.1991).

{¶38}    In our disposition of the third assigned error, we instructed the trial court the re-evaluate the evidence presented to arrive at a more equitable result regarding the division of property and allocation of debt obligations.  Said instruction necessarily entails a review of the propriety of awarding attorney fees and if so, how much. Accordingly, we sustain the fifth assigned error.

{¶39}    Judgment affirmed in part, reversed in part, and remanded for the trial court to re-evaluate the evidence to arrive at a more equitable division of property and debt obligations.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
SEAN C. GALLAGHER, J., CONCUR