[Cite as *Kaletta v. Kaletta*, 2013-Ohio-1667.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 98821

---

# LINDA A. KALETTA

PLAINTIFF-APPELLANT

vs.

# ROBERT S. KALETTA

DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART,
## AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-337633

**BEFORE:** McCormack, J., Stewart, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEY FOR APPELLANT**

Richard J. Stahl
18051 Jefferson Park Rd.
Suite 102
Middleburg Heights, OH 44130


**ATTORNEYS FOR APPELLEE**

Richard A. Rabb
Kaitlyn D. Arthurs
McCarthy, Lebit, Crystal & Liffman
101 West Prospect Avenue
Suite 1800
Cleveland, OH 44115

TIM McCORMACK, J.:

{¶1} Plaintiff-appellant, Linda A. Kaletta ("Linda"), appeals the trial court's judgment of July 24, 2012, in which the court terminated the marriage between Linda and defendant-appellee husband, Robert S. Kaletta ("Robert"), ordered spousal support to be paid by Robert, and prescribed a division of the property of the parties. For the reasons that follow, we affirm the trial court in part and reverse in part.

**Procedural History**

{¶2} On July 25, 2011, Linda filed a complaint for divorce, which was answered by Robert on August 17, 2011. Following unsuccessful attempts at settlement, the parties proceeded to a contested trial on May 30, 2012. Both Linda and Robert filed a final argument with the court on June 29, 2012 and July 5, 2012, respectively.

{¶3} The trial court, having heard the evidence and testimony presented by the parties during the one-day trial, issued its final judgment entry on July 24, 2012. The judgment entry granted the parties a divorce and ordered the marriage dissolved and set aside. In so doing, the court ordered Robert to pay Linda $1,500 per month for eight years.[1] This amount reflects a $500 credit to Robert for Linda's share on a marital loan.

---

[1] The trial court's judgment entry contains contradicting statements regarding the award of spousal support. The court initially orders that "Defendant shall pay spousal support to Plaintiff in the amount of $1,500.00 per month * * * for a term of ninety-six (96) months." However, in the section of the entry pertaining to the division of property, the court finds that ""Defendant shall assume the $1,000 per month payment [on the parties' Direct Loans] and receive a credit of $500.00 per month towards the spousal support." In so doing, the court "reduce[s] spousal support from $2,000.00 per month to $1,500.00 per month."

The overall spousal support amount is less than what both Linda requested and Robert had offered. The court also made certain findings with respect to the parties' marital property, ordering the division of the parties' assets and liabilities. The court retained jurisdiction of the spousal support, and it declined to award attorney fees. Linda now appeals the court's final divorce decree, objecting to the amount and duration of spousal support and alleging that the court inequitably divided certain property.

## Substantive Facts

### I. Income

**{¶4}** Linda and Robert were married on June 3, 1988. Two children were born of this marriage, both of whom were emancipated at the time of trial. The parties met while working at LTV Steel ("LTV"). Linda testified that she was employed by LTV from 1976 to 1990. In 1990, she left employment upon having her first child. As a result of her employment with LTV, Linda obtained pension benefits valued at approximately $8,300. The parties were married for two years during Linda's employment with LTV.[2]

**{¶5}** Presently, Linda is employed by PSI Affiliates ("PSI") and works as a health aide for a school system. She works 30 hours per week, and her current salary is $8.70 per hour. In 2011, Linda's yearly salary was approximately $8,791. Through her employment, she contributes to the School Employees Retirement System of Ohio

---

[2] While the trial court provides in its judgment entry that Linda's employment ended in 1991, thus finding the pension consists of three years of marital property, this court notes that the evidence shows Linda left employment with LTV in 1990, two years into her marriage with Robert.

("SERS"), which benefits she will receive upon her retirement. Linda's accrued balance with SERS is presently valued at $2,339.06. Linda last worked full time in 1990. She testified that she has searched for full-time employment during the last year by searching through the newspapers. She stated, however, that it "has been a few months" since she has done so. Linda also testified that she received one offer for full-time employment through PSI the previous year. She testified that she "was advised by Robert not to take it."

{¶6} On November 7, 2011, the court magistrate granted Linda's request for temporary spousal support. The court ordered Robert to pay Linda $500.00 per month, effective September 26, 2011. There is some evidence indicating that there were arrearages due as of April 30, 2012, in the approximate amount of $368.64. During the trial, Robert's attorney stipulated that no spousal support payments were made "in September, October, and November."

{¶7} Robert was previously employed by Larson-Juhl, earning approximately $102,000 annually. During this time, Robert had a 401(k) account with Larson-Juhl. Robert obtained a loan from this account for the purposes of paying down marital debt, leaving an approximate 401(k) balance of $36,475. Robert testified that he made bi-weekly payments of approximately $296 towards the balance on this loan. These payments were withdrawn from Robert's paychecks from Larson-Juhl. Robert maintained this account during his marriage to Linda.

{¶8} Robert testified that he voluntarily left his employment with Larson-Juhl in order to find "something that would give [him] some stability * * * other than living out of a hotel room." In doing so, he reduced his income from approximately $102,000 to his present salary of $90,000. Furthermore, because he left Larson-Juhl, Robert testified that he has defaulted on his 401(k) loan with his former employer. The balance on the defaulted loan, according to Robert, "will be on the 1099 for $17,000 in expenses."

{¶9} Presently, Robert is employed by ArcelorMittal as Process Manager of Operations, earning approximately $90,000 per year, payable semi-monthly. Robert received a signing bonus from ArcelorMittal in the amount of $15,000. The parties also received a tax refund in the approximate amount of $5,000 for 2011.

## II. Property

{¶10} The parties own a home located in North Royalton, Ohio. This home is encumbered by a mortgage held by Select Portfolio Mortgage in the amount of $133,580 and an equity line of credit with Federal Savings and Loan in the amount of $37,587.

{¶11} Prior to the marriage and prior to the purchase of the marital home referenced above, Linda owned and resided in a home in Cleveland, Ohio. Following the parties' marriage, Linda and Robert lived in the Cleveland property as husband and wife. During such time, the parties made substantial repairs to the house. The home was sold for approximately $62,000. The proceeds from the sale of the Cleveland property were used for a down payment on a home in Middleburg Heights, where the parties resided until they purchased the marital home in North Royalton. Linda testified that the

proceeds from the sale of the Cleveland property totaled approximately "$30,000 [or] $40,000." She did not produce any documents in support of this statement. There is some dispute, however, over whether Linda's attorney gave the documents supporting Linda's premarital interest in the Cleveland property to Robert's attorney.

{¶12} The parties have also maintained several bank accounts, which hold monies obtained from various sources. Linda had an account with FirstMerit Bank in the approximate amount of $3,790. Linda testified that she withdrew this amount from the parties' joint savings account with Third Federal Savings & Loan. Linda also maintains an account at Holy Family Credit Union with an approximate balance of $1,400, in addition to a Total Control Account that had an approximate balance of $5,630, which represents Linda's inheritance from Robert's uncle. Robert received the same amount, $5,630, as an inheritance from his uncle.

{¶13} Additionally, the parties had two joint accounts at Third Federal with a combined balance of $70.83. Robert maintains two accounts at Huntington Bank that had a combined balance of approximately $12,787. This balance included Robert's inheritance from his uncle for $5,630 and the net proceeds of his signing bonus from ArcelorMittal. Robert also has in his possession an uncashed 2011 tax refund of approximately $5,000.

{¶14} Finally, the record demonstrates that four cars are titled in Robert's name: (1) 2001 Ford Windstar, driven by and in the possession of Linda; (2) 2001 Mercury Marquis, driven by and in the possession of Robert; (3) 1998 Chrysler Sebring, driven by

and in the possession of the parties' daughter; and (4) 2000 Honda Civic, driven by and in the possession of the parties' son.

### III. Debt

**{¶15}** During the marriage, the parties acquired significant debt in the form of credit card accounts and personal loans. Robert testified that he borrowed $22,000 from his 401(k) with his former employer, Larson-Juhl, in order to apply payments to the marital credit cards. The balance of this loan was approximately $17,000.

**{¶16}** At the time of this appeal, there were two outstanding credit cards with substantial balances. Robert testified that he closed one of the accounts to prevent Linda from using it. The majority of the purchases on the credit cards were marital. There is some evidence that, on occasion, Robert used one of the cards for business purchases that were later reimbursed by his employer. The Slate Chase credit card has an approximate balance of $13,573, while the Capital One credit card has an approximate balance of $13,462. Robert charged $2,000 on a credit card account for payment of his attorney's retainer fee. It is unclear which credit card contains this charge. Linda, on the other hand, borrowed $750 from her mother for payment of her attorney fees thus far.

**{¶17}** Finally, Robert initiated three Direct Loans totaling approximately $64,000 for the purposes of paying a portion of the daughter's college tuition. The loans are in Robert's name and were issued in October 2009, September 2010, and September 2011. Payments were scheduled to begin in January 2013, unless deferred by certain circumstances. As of the date of the trial court's decision, the college loans were not in

repayment status. Linda testified that she disapproved of these loans, stating that the interest rate of 7.9 percent was too high.

## Assignments of Error

{¶18} Linda appeals the judgment entry of the trial court and raises the following six assignments of error:

> I.  The trial court abused its discretion by failing to detail the factors used to calculate spousal support.

> II.  The trial court abused its discretion by ordering a spousal support obligation below what would be equitable.

> III.  The trial court abused its discretion by ordering spousal support for an inequitable duration.

> IV.  The trial court abused its discretion by failing to credit [plaintiff-appellant] for her pre-marital interest in the real property.

> V.  The trial court abused its discretion by inequitabl[y] dividing the parties['] personal property.

> VI.  The trial court abused its discretion by burdening the [plaintiff-appellant] with student loan debt incurred by [defendant-appellee].

## Standard of Review

{¶19} We review a trial court's determination in domestic relations cases under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

> Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, * * * it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.

*Id.*, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). This same standard applies to orders relating to spousal support and the division of marital property. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983), and *Martin v. Martin*, 18 Ohio St.3d 292, 294, 480 N.E.2d 1112 (1985). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore* at 219.

### Law and Analysis

### I. Spousal Support

{¶20} Linda's first three assignments of error pertain to the trial court's award of spousal support. We will, therefore, address them together. In her first assignment of error, Linda argues that the trial court abused its discretion in failing to detail the factors used to calculate spousal support. In her second and third assignments of error, Linda maintains that the trial court abused its discretion by awarding an inequitable amount of spousal support for an inequitable duration.

{¶21} In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors outlined in R.C. 3105.18(C)(1)(a)-(n). *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. R.C. 3105.18(C)(1) provides as follows:

> (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n).

{¶22} The goal of spousal support is to reach an equitable result. *Kaechele* at 96. While there is no set mathematical formula to reach this goal, the court must consider all of the factors outlined above and "not base its determination upon any one of those factors taken in isolation." *Id.* The trial court is not required to enumerate each statutory factor, however, it must demonstrate that it considered all of the "relevant factors." *Marsh v. Marsh*, 6th Dist. No. OT-09-036, 2010-Ohio-5023, ¶ 6. Essentially, either the record or the trial court's decision must articulate the basis for the award in sufficient detail "to enable an appellate court to establish whether the award is fair, equitable and in accordance with the law." *Kaechele* at 97; *Friedler v. Friedler*, 8th Dist. No. 92402, 2009-Ohio-4719, citing *Stafinsky v. Stafinsky*, 116 Ohio App.3d 781, 689 N.E.2d 112 (11th Dist.1996).

{¶23} In this case, the trial court found that the parties were married on June 3, 1988, and two children were born of this marriage. As of the date of trial, both children had reached the age of majority. The court determined that "the duration of the marriage shall be from June 3, 1988 until May 30, 2012." As it pertains to spousal support, the court deemed it appropriate for Robert to pay Linda spousal support. In reaching its decision, the court stated that it "consider[ed] the factors set forth in Ohio Revised Code 3105.18." It further considered the following factors:

> The income of the parties demonstrates a disparity; Defendant is currently employed at ArcelorMittal Cleveland at a salary of $90,000 per annum. Plaintiff is employed at PSI Affiliates part-time at a rate of $8.70 per hour. Plaintiff did not offer any evidence as to why she is not currently employed

full-time nor did she provide the Court with evidence she is seeking full-time employ.

Both parties have retirement benefits; Plaintiff has retirement benefits from her job at LTV Steel, with an approximate value of $8,000. Plaintiff's employ at LTV Steel began in 1976 and terminated in 1991, therefore only three (3) years of the aforementioned pension is marital. Plaintiff also has retirement benefits through SERS, with an approximate value of $2,339.06, all of which is marital. Defendant has a 401(k) through Larson-Juhl, with an approximate balance of $36,475.00, which is marital and shall be divided accordingly.

{¶24} In a post-trial brief, Linda requested spousal support in the amount of $2,500 per month for a period of seven years. In response, Robert requested that the court order support in the amount of $2,000 for nine years. The trial court rejected both parties' positions and awarded spousal support in an amount less than even Robert was willing to pay.

{¶25} Based upon the factors outlined above, the court ordered that "Defendant shall pay spousal support to Plaintiff in the amount of $1,500.00 per month plus a processing fee for a term of ninety-six (96) months [or eight years]."[3] The court further ordered that it shall retain jurisdiction to modify its order.

{¶26} While the trial court stated that it considered "the factors set forth in Ohio Revised Code 3105.18," it specifically delineated only the parties' retirement benefits and their present income, finding a "disparity." In reviewing the trial court's order, and in

---

[3] This amount reflects the $2,000 support award less the $500 credit Robert receives for payment of the student loan debt the court divided between the parties.

light of the evidence on the record, we find that the trial court failed to give sufficient weight to the factors enumerated in R.C. 3105.18(C).

{¶27} The trial court is not required to enumerate each statutory factor, however, it must demonstrate that it considered all of the "relevant factors." Our review of the record indicates that the trial court failed to give due consideration to the following relevant factors: the relative earning abilities of the parties, the ages of the parties, the duration of the marriage, the standard of living of the parties established during the marriage, the tax consequences for each party of an award of spousal support, and the lost income production capacity of either party that resulted from that party's marital responsibilities. *See* R.C. 3105.18(C)(1)(a)-(n).

{¶28} At the time of trial, Linda was 60 years old. Prior to having children, Linda worked full-time at LTV, earning approximately $20,000. In 1990, upon the birth of their first child, Linda left employment with LTV. Contrary to the evidence presented at trial, the trial court incorrectly determined that Linda left her employ in 1991, thus concluding that three years of her pension with LTV, rather than two, is marital property.

{¶29} The evidence demonstrates that Linda has not worked full-time since her employment at LTV. Linda testified that she is presently employed for 30 hours per week at a rate of $8.70 per hour. She earned approximately $8,790 in 2011, $8,938 in 2010, and $7,013 in 2009. In its order, the trial court concluded that "Plaintiff did not offer any evidence as to why she is not currently employed full-time nor did she provide the court with evidence she is seeking full-time employment." During the trial, however,

Linda testified that she "did have an offer of full-time employment last year through PSI, but [she] was advised by Robert not to take it." While this testimony was not developed, it is uncontroverted, and it directly contradicts the court's finding that Linda did not provide the court with evidence that she is seeking full-time employment.

{¶30} At 60 years of age, and having been a homemaker for the majority of their marriage, leaving full-time employment upon the birth of their first child, Linda stands today with little opportunity to develop meaningful employment. She has effectively been prevented from re-establishing herself in a career at this point in her life and with outdated skills, education, and training. Robert, on the other hand, is eight years younger than Linda and has maintained a successful career. Based upon the evidence of employment found in the record, Robert has a much higher earning capacity than Linda ever will. While Robert contends that Linda failed to produce evidence of her "marital contributions" and "familial duties," this court finds that Linda's undisputed testimony is that she left full-time employ with LTV in 1990 upon the birth of the parties' first child. Impliedly, Linda's reason for doing so was to care for the child (and an additional child born in 1993).

{¶31} Linda and Robert were married for 24 years. This was a marriage of long duration. Other than acknowledging the length of the marriage by identifying the date of the marriage, there is no indication that the trial court gave due consideration to the substantial duration of the marriage. Nor did the court adequately consider Linda's resources and her ability and potential to become self-supporting, in light of her limited

history of employment.  *See Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990), paragraph one of the syllabus (finding that a spousal award of indefinite duration may be appropriate in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability, and potential to be self-supporting).

{¶32} In a factually similar case, the Ninth District Court of Appeals recently determined that while the trial court is not required to award spousal support, it must set forth a sufficient basis to support its award.  *Kent v. Kent*, 9th Dist. No. 26072, 2012-Ohio-2745, ¶ 17.  In that case, the parties had been married for 26 years, the wife stopped working the year after the parties' first child was born, and she remained at home caring for the children for 19 years.  The wife returned to part-time employment after having raised the children.  The trial court awarded the wife 8.4 years of spousal support without explanation for this duration.  Upon review, the appellate court determined that the fact that the marriage was one of substantial duration and the wife had little opportunity to develop meaningful employment (as a result of her role as primary caregiver), were weighty factors that should have been considered by the trial court in awarding spousal support of a limited duration.  *Id.*  It concluded that "[a]bsent any explanation on the part of the trial court for the limited duration of its award, we cannot conclude that the court properly exercised its discretion" in awarding the wife 8.4 years of support.  *Id.*

**{¶33}** The trial court in the instant matter failed to provide any explanation for its spousal support in the amount of $1,500 for 96 months (eight years). Nor did it demonstrate that it considered such factors as the substantial duration of the marriage, Linda's role as primary caregiver of the parties' children, or her opportunity to return to gainful full-time employment.

**{¶34}** Moreover, the court failed to explain why it awarded spousal support in an amount *less* than both parties had requested. In Linda's post-trial brief, she asked that the court award spousal support in the amount of $2,500 for seven years. This award would amount to $210,000 over the course of the support period. Robert, on the other hand, requested the court order $2,000 spousal support for nine years, which amounts to $216,000 over the duration of the support order. In ordering $2,000 in spousal support for eight years (notwithstanding the $500 credit to Robert for the college loan), the court awarded Linda support in the amount of $192,000 over the life of the order, which amounts to *$24,000 less* than the amount Robert was willing to pay. As a result of the above, we cannot conclude that the court properly exercised its discretion in awarding the above support.

**{¶35}** Accordingly, Linda's first, second, and third assignments of error are sustained.

## II. Division of Property

**{¶36}** In a divorce proceeding, marital property includes the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the

spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *.

R.C. 3105.171(A)(3)(a)(i)-(iii).

{¶37} R.C. 3105.171(C)(1) mandates an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Strauss v. Strauss*, 8th Dist. No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v. Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, 791 N.E.2d 434. In order to determine what is equitable, the trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* Such factors include, among others, the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, and any retirement benefits of the spouses. R.C. 3105.171(F)(1)-(10). Moreover, the trial court must take into account the parties' marital debt when dividing marital property. *Kehoe v. Kehoe*, 8th Dist. No. 97357, 2012-Ohio-3357, ¶ 14, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 169, 694 N.E.2d 989 (4th Dist.1997).

{¶38} Marital property, however, does not include separate property. R.C. 3105.171(A)(3)(b). "Separate property" is any real and personal property and any interest in real or personal property that was acquired by one spouse prior to the date of

the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with other property does not destroy the identity of the separate property "except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have certain property classified as "separate property" has the burden of proof in tracing the separate property. *Strauss* at ¶ 49, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶39} The marital assets in this case consist of both personal and real property. The real property includes the marital home located in North Royalton, which is encumbered by a mortgage in the amount of $133,580 and an equity line of credit in the approximate amount of $37,587. The parties also have personal assets, consisting of various bank accounts, retirement accounts, inheritances, a tax refund from 2011, Robert's signing bonus from ArcelorMittal, and four vehicles titled in Robert's name. The parties' debts or liabilities consist of the following: the mortgage and equity line on the marital home, the $17,000 balance on a 401(k) loan from Robert's former employer, two credit cards with balances in excess of $13,000 each, and three Direct Loans for payment of the daughter's college education in the total approximate amount of $64,315.44.

## A. Cleveland Property

{¶40} Linda's fourth assignment of error asserts that the trial court abused its discretion in failing to provide Linda credit for her pre-marital assets that contributed to the purchase of the marital home.

{¶41} Prior to purchasing the North Royalton home and prior to the marriage, Linda owned the property in Cleveland, Ohio. The proceeds from the sale of the Cleveland property were used for a down payment on a home in Middleburg Heights, which was the marital home until the North Royalton property was purchased.

{¶42} In its judgment entry, the trial court ordered the marital property divided between the parties. In so doing, the court found that all equity in the North Royalton home was marital, as there was no tracing provided with respect to the monies from the sale of the Cleveland property.

{¶43} In this case, there is no dispute that Linda owned the Cleveland property prior to the parties' marriage, and Linda and Robert lived there as husband and wife for a period of time. During such time, the parties made substantial repairs to the property. It was also not disputed that the proceeds from the sale of the Cleveland property were applied toward the down payment of the marital home in Middleburg Heights. Linda fails, however, to provide any evidence documenting such funds. She testified that the Cleveland home sold for "$62,000, I believe." She also testified that the down payment for the Middleburg Heights home was "$30,000 [or] $40,000." However, she failed to present any documentation establishing an adequate trace of the funds acquired from the sale of the Cleveland home or the monies used for the down payment of the Middleburg Heights home. Accordingly, we find the trial court did not abuse its discretion in designating all equity with respect to the real properties at issue as marital property and

dividing it equally between the parties.  Linda's fourth assignment of error is without merit.

### B.  Inequitable Division

**{¶44}** In her fifth assignment of error, Linda states that the trial court abused its discretion in equally dividing the parties' property, yet producing an inequitable result. For the following reasons, we agree.

**{¶45}** As previously stated, a trial court must divide the marital property of the parties equitably, and in equitably dividing such property, the court must consider certain statutory factors.  Our review of the record, however, indicates that the trial court failed to give due consideration to the relevant factors outlined in R.C. 3105.171(F) when it, essentially, divided the parties' assets and liabilities equally.

**{¶46}** The entry provides that Robert shall refinance the marital home.  In so doing, he shall pay Linda 50 percent of the net equity, which is the value of the property less the balance of the mortgage and equity line of credit.

**{¶47}** In dividing the bank accounts, the court ordered as follows:

> The parties have several bank accounts; Plaintiff holds an account at FirstMerit in the amount of $3,790.11, an account at Holy Family Credit Union with a balance of $1,400 and a Total Control Account with a balance of $5,630.57, created from an inheritance from Defendant's uncle.

> There are two joint accounts held at Third Federal Savings and Loan with a combined balance of $70.83.  Defendant holds two (2) accounts at Huntington Bank with [a] combined balance of $12,787.32.  Included in Defendant's accounts are the inheritance of $5,600, leaving a remaining balance of $7,187.32.

{¶48} The trial court concluded that the difference between the monies held by Robert and the monies held by Linda is $1,982.46. It, therefore, ordered Robert to pay half of this difference, amounting to $991.23. It is unclear how the court reached this number and whether the joint account balance of $70.83 was divided equally and factored into the equation. This court was unable to replicate the exact figure reached by the trial court in calculating the parties' accounts.

{¶49} Moreover, this court notes that both Robert and Linda received separate inheritances from Robert's uncle in the approximate amount of $5,630. These amounts are considered separate property, and it is undisputed that such funds have been maintained separately and not commingled. Therefore, the inheritance should not be considered jointly in the division of the parties' assets.

{¶50} With respect to the parties' automobiles, the court ordered Robert to transfer the title of the 2001 Ford Windstar to Linda. There is no further reference to the remaining three vehicles titled to Robert. While the testimony provided that Robert and the two children drive the remaining vehicles, the court failed to allocate such vehicles to the parties or the children.

{¶51} In addressing the loan that Robert took out on his 401(k) with his former employer, Larson-Juhl, the court found that there is a current balance of approximately $17,000. The court stated that Robert "shall assume the entire amount of the 401(k) loan * * * and as an offset shall be entitled to retain the entire amount of the [2011] tax return." In awarding spousal support, the trial court initially found that Robert has a

401(k) account through Larson-Juhl, "with an approximate balance of $36,475, which is marital and shall be divided accordingly." The court, however, does not provide further instructions on its division, nor does the court specifically refer to the account in its order dividing the property.

{¶52} With respect to the credit card accounts, the court finds that these accounts are marital. The court determines that "[s]ince the balances are relatively equal," Robert shall assume sole liability on the Capital One account, with an approximate balance of $13,462, and Linda shall assume sole liability on the Slate Chase account, with an approximate balance of $13,573.

{¶53} Finally, concerning the Direct Loans incurred for the benefit of the daughter, the trial court found that these loans, in the approximate amount of $64,315.44 are marital property and shall be "equally divided." In accordance with this finding, the court ordered the loan to be repaid "in the amount of $1,000 per month, which equally divided is $500.00 per party."

{¶54} Despite the fact that the trial court appears to have attempted to divide the properties equally, the court's order fails to reflect that it considered the factors outlined in R.C. 3105.171(F) to ensure that the division was equitable. Moreover, in considering such factors, it appears from the evidence provided that such division was, in fact, inequitable.

{¶55} In the first place, while outlining the various assets and liabilities of the parties, the trial court failed to adequately consider the substantial disparity in the

incomes, the earning potential of the parties, the debt-to-income ratio, and the tax consequences of the equal division of such assets and liabilities. While an exhaustive discourse of each factor is not necessary, "there must be a 'clear indication that the statutory factors were considered and played a role in the ultimate division of property.'" *Renz v. Renz*, 12th Dist. No. CA2010-05-034, 2011-Ohio-1634, ¶ 36, quoting *Heslep v. Heslep*, 7th Dist. No. 825, 2000 WL 818909 (June 14, 2000). Moreover, the trial court must consider the tax consequences of its property division, unless those consequences are speculative. R.C. 3105.171(F)(6); *Renz* at ¶ 36.

{¶56} Secondly, the trial court failed to consider the substantial duration of the parties' marriage. As we previously stated, other than noting the beginning and ending date of the marriage, the trial court failed to give due consideration to the 24-year marriage of Linda and Robert.

{¶57} In this case, there is no clear indication that the aforementioned factors played a role in the trial court's division of the parties' property. With respect to the parties' incomes, it is not clear what yearly salary the court imputed to Linda, merely finding her salary to be "$8.70 per hour." We do not know if the court considered Linda's base hours of 30 per week and whether her pay was calculated for nine months (the school year) or 12 months. If we calculate Linda's salary at $8,247.52 (the average of her last three years' salaries as evidenced by the parties' tax returns), the substantial disparity in the parties' income is clear. Furthermore, the court failed to consider that Robert's salary of $90,000 per year (which was unilaterally reduced weeks before trial by

Robert's changing employment) will potentially increase, while Linda's earning capacity is unlikely to change. The same is true for the parties' retirement funds. While Robert's relative earning abilities increase, so does his retirement account. Linda's retirement account, on the other hand, will be substantially smaller, given her age and previous employment history.

{¶58} While the trial court attempted to divide the large credit card balances and the substantial balance on the Direct Loans equally, given the totality of the parties' income, assets, and retirement benefits, this court cannot conclude that such division was equitable. In equally dividing the credit card balances and the Direct Loans, the trial court failed to consider that Robert's income is nearly ten times that of Linda's income. Moreover, Robert's income and retirement benefits will likely increase, given his age and his established career.

{¶59} Without explanation, the trial court assigned the credit card with the largest balance to Linda. It is not clear whether this balance includes Robert's $2,000 attorney fee that he charged to a credit card. Under the circumstances, we cannot conclude that this distribution was reasonable.

{¶60} Further, again without explanation or consideration of any statutory factors, the trial court divided the substantial Direct Loans balance of approximately $64,315.44 equally between the parties, ordering each party to pay $500 per month. With Robert's annual income at $90,000, with a higher earning capacity, and Linda's income at approximately $8,247.52, with a considerably lower income potential, we cannot

conclude that the parties' debt-to-income ratio and their respective earning abilities played a role in the ultimate division of this property.

{¶61} Moreover, the court failed to consider any tax consequences of the division of the parties' property, specifically with respect to the net equity Linda would receive from the refinancing of the parties' marital home or the receipt of her share of Robert's retirement fund with his former employer. The trial court does not provide explicit instructions for the distribution of Robert's retirement fund. However, for purposes of this order, we interpret the trial court's statement that the funds be "divide[d] accordingly" to mean that Linda would receive half of this account and she would, as such, be burdened by the tax consequences upon receiving her share of such funds. Additionally, the court does not address the tax consequences of Robert's default on the 401(k) loan caused by his leaving employment at Larson-Juhl, including any penalties assessed for such default. Linda will also pay taxes on the spousal support she receives. Finally, with respect to the Direct Loans incurred for the daughter's college education, the trial court divided the indebtedness equally. However, it failed to consider the "education credit" Robert has received on his tax returns as a result of such loans. Linda will receive no such credit.

{¶62} In light of the above, we find the trial court either failed to consider the relevant factors outlined in R.C. 3105.171(F) or failed to provide enough detail in its order to allow this court to determine that such factors were considered in its division of

property.   Therefore, we cannot conclude the trial court properly exercised its discretion in dividing the property in an equitable manner.

{¶63} Accordingly, we sustain Linda's fifth assignment of error and order the trial court to re-evaluate the evidence in light of the foregoing, in order to achieve a more equitable result.

## C.   Direct Loans

{¶64} In Linda's sixth assignment of error, she contests the trial court's division of Direct Loans taken out by Robert to pay for their daughter's college education. As an initial matter, Linda claims that the above referenced Direct Loans were incurred solely by her husband and without her knowledge or consent.   She states, therefore, that the obligation on these loans should be borne by Robert alone.

{¶65} Assets and debts incurred during a marriage are presumed to be marital, unless it can be proven that they are separate property.   *Kehoe*, 8th Dist. No. 97357, 2012-Ohio-3357, ¶ 14, citing *Vergitz v. Vergitz*, 7th Dist. No. 05 JE 52, 2007-Ohio-1395, ¶ 12.   In particular, this court has held that student loan obligations undertaken during the marriage for the benefit of a couple's emancipated child should be treated as any other expense of the marriage and, thus, is considered marital debt.   *Id.* at ¶ 16.   The determinative factor is whether the debt was incurred during the marriage.   *Nemeth v. Nemeth*, 11th Dist. No. 2007-G-2791, 2008-Ohio-3263, ¶ 50; *Gallo v. Gallo*, 11th Dist. No. 2000-L-208, 2002-Ohio-2815 (refusing to treat college loan incurred by the husband

after the divorce was filed and after the effective date of the end of the marriage as marital debt).

{¶66} In this case, Robert incurred approximately $64,315.44 in college direct loans for the benefit of the parties' emancipated daughter. The first loan, incurred on October 28, 2009, and the second loan, incurred on September 20, 2010, were undertaken prior to the commencement of divorce proceedings. The final loan, however, was undertaken on September 22, 2011, almost two months after the divorce was filed, but several months prior to the termination date of the marriage.

{¶67} The trial court in this case determined that the duration of the marriage is from June 3, 1988 to May 30, 2012. Moreover, it stated that "the College Direct Loans, in the amount of $64,315.44 * * * were taken out in furtherance of the daughter['s] * * * education." The court then concluded that "because the loans were taken out during the marriage and for the parties' daughter [they] are hereby deemed marital debt." We cannot, therefore, conclude that the trial court's determination that the Direct Loans were marital property was an abuse of discretion in that regard.

{¶68} Nevertheless, in its entry, the trial court states that the "[e]vidence presented demonstrates the loan is to be repaid in the amount of $1,000 per month, which equally divided is $500 per party." It, therefore, found that "[Robert] shall assume the $1,000 per month payment and receive a credit of $500 per month towards the spousal support."

{¶69} The record, however, does not support the trial court's finding in this regard. The only evidence presented with respect to a monthly payment on the loan obligation is

a statement from Direct Loans, which itemizes the loans, the interest rate, and the original loan amounts. This statement identifies the "payment amount due" as $811.39. The court's figures, therefore, are arbitrary and not supported by the evidence.

{¶70} Further, unless certain circumstances arise to cause deferment of this loan, repayment would have begun January 2013, approximately seven months after spousal support was ordered. It is not clear from the trial court's order whether Robert is to pay $2,000 in spousal support until the loan repayment potentially began in January 2013, when Robert would begin receiving the Direct Loans "credit of $500.00" from Linda.

{¶71} In light of this evidence, we find the trial court's decision regarding the amount of the parties' student loan obligation is arbitrary and unreasonable and, therefore, it is an abuse of discretion. Accordingly, Linda's sixth assignment of error is overruled in part and sustained in part.

{¶72} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
MARY J. BOYLE, J., CONCUR