[Cite as *Walpole v. Walpole*, 2013-Ohio-3529.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99231

## KATHLEEN WALPOLE

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

## THOMAS L. WALPOLE, III

DEFENDANT-APPELLEE/
CROSS-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART AND REVERSED IN PART

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-318177

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEYS FOR APPELLANT**

Robert M. Fertel
Christopher R. Reynolds
Andrew A. Zashin
Zashin & Rich Co., L.P.A.
55 Public Square
4th Floor
Cleveland, OH 44113


**ATTORNEY FOR APPELLEE**

Adam J. Thurman
Schoonover, Rosenthal, Thurman, & Daray, L.L.C.
1001 Lakeside Avenue, Suite 1720
Cleveland, OH 44114

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant Kathleen M. Walpole ("Kathleen") appeals a judgment entry of divorce that awarded: (1) temporary spousal support, (2) denied her request for pretrial attorney fees, and (3) divided the marital assets. Defendant-appellee Thomas L. Walpole, III ("Thomas") cross-appeals from the judgment entry of divorce and challenges: (1) the spousal support award, (2) the award of attorney fees, and (3) the trial court's conclusion that certain assets were separate property. We find some merit to the appeal, affirm in part, and reverse in part.

{¶2} Kathleen and Thomas were married on January 6, 1975, and had two children, both of whom were emancipated at the time of trial. Throughout the divorce proceedings, Thomas was employed by Novelis Corporation ("Novelis") on an expatriate assignment in Seoul, South Korea. Kathleen, who previously worked as a teacher, had not worked for several years prior to the divorce.

{¶3} Kathleen filed the complaint for divorce on October 4, 2007, and a motion for temporary spousal support on October 19, 2007. At trial, the parties disputed the actual amount of compensation Thomas received from Novelis for purposes of calculating spousal support and temporary spousal support. There are several components to Thomas's compensation package from Novelis, including a base salary, "expatriate compensation," a "location allowance," a "goods and services adjustment," and "additional income taxes" (also referred to as "hypothetical" or "grossed up" tax) and bonuses. The expatriate compensation and the location allowance were each calculated

as 10 percent of Thomas's base salary. In 2007, Thomas's base salary was $270,000 and the addition of these components brought it up to $324,000. In 2008, his base salary was $285,000 and the two 10 percent premiums brought it to $342,000. At the time of trial, Thomas's base salary had increased by 5 percent each year since 2005. Thomas also received substantial bonuses and retirement benefits.

{¶4} The magistrate issued its order for support pendente lite, on April 23, 2008, and ordered Thomas to pay Kathleen $15,000 per month, plus a two percent processing fee, retroactive to October 19, 2007. Shortly thereafter, Thomas filed a request for an oral hearing to modify the support pendente lite pursuant to Civ.R. 75(N) and the court scheduled a hearing for August 28, 2008. However, pursuant to an agreed judgment entry, the hearing was continued to the final trial.

{¶5} The first payment of spousal support was disbursed to Kathleen on May 30, 2008. At the time of trial, which took place over several days in November and December 2008, Thomas had a temporary spousal support arrearage in the amount of $103,621. The arrearage was the result of the retroactivity of the magistrate's April 23, 2008 order.

{¶6} The magistrate who presided over the trial released her decision in September 2009. The trial court released its decision adopting most of the magistrate's decision while sustaining some objections on May 16, 2011. The magistrate found, and the court agreed, that it was inequitable to require Thomas to pay the entire amount of the temporary spousal support arrearage under the circumstances in this case. The court

explained that Kathleen removed $1,100,000 from the parties' joint Fidelity Investments account, and Thomas maintained the marital residence without any contribution from Kathleen. The court determined that the commencement date for temporary supposal support should be April 1, 2008, the month of the magistrate's original order of support pendente lite. Consequently, Thomas was ordered to pay a retroactive temporary support arrearage from April 1, 2008, through June 1, 2008, in the amount of $30,000.

{¶7} With respect to permanent spousal support, the trial court adopted the magistrate's recommendation and ordered Thomas to pay Kathleen $14,000 per month for a period of ten years. The court reserved jurisdiction to modify the amount of spousal support within the ten-year term based on Thomas's retirement "or any other change in accordance with Ohio Revised Code Section 3105.18."

{¶8} The court ordered that the marital residence be sold and the net proceeds divided equally. The court also divided the parties' automobiles, mint coin collection, and frequent flier miles as of November 5, 2008, the date the marriage ended. The parties stipulated during trial that the division of household goods and furnishings as it existed at the time of trial represented an equal division of such items including a camera in Thomas's possession. Kathleen was awarded Thomas's entire interest in the Novelis Savings Plan ("401K") in the amount of $887,359. Thomas was awarded his entire interest in his Alcan Corporation Non-Qualified Deferred Compensation Plan, with a value of $724,956. However, the court's order requires Thomas to pay Kathleen five equal annual installments of a predetermined amount. Thomas was awarded 50 percent

of Kathleen's State Teacher Retirement System Pension Plan. The court further awarded Kathleen 50 percent of Thomas's Novelis Pension Plan and his Novelis Supplemental Retirement Benefit Plan.

{¶9} Part of Thomas's compensation package included payments under Novelis's Long Term Incentive Plan ("LTIP"). The magistrate's decision limited Kathleen's share of the LTIP to one-half of any additional LTIP bonus (beyond $22,773 previously released to Thomas) that was earned during any period prior to November 5, 2008. The court sustained Kathleen's objection to the award and ordered Thomas to provide Kathleen an accounting of his receipt of any LTIP bonus received after the trial date, but earned prior to the termination date of the marriage. The court found that Kathleen was entitled to one-half of any portion of Thomas's LTIP bonus (beyond that which had already been received prior to trial) to the extent that LTIP funds were earned prior to the termination of the marriage, net Thomas's payable taxes on the funds.

{¶10} The trial court found that Thomas's bonuses in 2008, including the JB-Bonus-Pensionable in the amount of $129,938, the JP-Bonus-non-pensionable, in the amount of $16,843, and the LTIP in the amount of $22,773, totaled $169,554. Pursuant to an agreed judgment entry dated September 2, 2008, Thomas used these funds to pay marital expenses and they were not subject to division.

{¶11} The magistrate determined that Thomas's last installment of the Recognition Award in the amount of $157,255, payable in 2009, is a marital asset subject to equal division. Thomas objected to the value of the Recognition Award, arguing that it should

be adjusted by the stipulated marginal tax rate of 35 percent. The trial court sustained the objection and adjusted the value down to $102,216.

{¶12} Prior to filing the complaint for divorce, the parties had four individual retirement ("IRA") accounts and an investment account with Fidelity. The parties' joint Fidelity investment account ("Fidelity Account 1935") had a value of $1,936,484 on October 1, 2007. The parties stipulated that on October 22, 2007, Kathleen withdrew $1,100,000 from that account. She withdrew the entire cash balance of $535,727 and obtained the remainder through a margin loan of $562,707 against the value of the stock in the account.

{¶13} As of October 31, 2007, the total market value of the remainder of Fidelity Account 1935 was $1,439,704. By the time of trial in November 2008, the value had dropped to $890,929. The court adjusted this amount by the amount of the original margin loan in the amount of $562,707, the interest accrued on it over the previous year in the amount of $35,109, and Kathleen's repayments of the margin loan in the amount of $92,000. The trial court determined that Fidelity Account 1935 should not have been divided until the time of trial "in order to fairly distribute the losses of the market between the parties." At the time of trial, the total value of Fidelity Account 1935, including the $1,100,000 Kathleen previously removed, was $1,990,929. The trial court determined that the actual value of the remainder of Fidelity Account 1935, minus Kathleen's $1,100,000 and the margin loan, was $400,573. The court awarded the remainder of

Fidelity Account 1935 to Thomas and awarded Kathleen the $1,100,000 she removed from the account in 2007.

{¶14} The court also divided several bank accounts, savings bonds, a Fidelity money market account, and the parties' IRAs. The court found that certain accounts at Solvay Bank and First Charter Bank were not marital property and therefore not subject to division. Although Kathleen suggested that Thomas was hiding funds in offshore accounts, the court found there was no compelling evidence proving that Thomas had any other bank accounts or investment accounts.

{¶15} Both parties filed motions for attorney fees. The court denied Thomas's motion for attorney fees and awarded Kathleen attorney fees incurred during the trial, but denied her request for any attorney fees incurred prior to trial.

{¶16} Kathleen filed a timely notice of appeal in August 2011. However, this court remanded the appeal to the trial court for lack of a final, appealable order. Following the trial court's final resolution of all issues in the case, Kathleen filed a second notice of appeal. In this appeal, she raises 21 assignments of error. Thomas cross-appeals and raises five assignments of error. We address some of the assigned errors together for the sake of economy.

## Amount and Duration of Spousal Support

{¶17} In the first assignment of error, Kathleen argues the trial court abused its discretion by improperly determining the amount and duration of spousal support. She contends that despite the trial court's intention to award support to maintain a lifestyle

comparable to the parties' marital standard of living, it failed to account for a gross disparity in the parties' incomes. She also argues the court erroneously limited the spousal support award to a period of ten years while retaining jurisdiction to modify the amount of the award.

{¶18} In Thomas's second assignment of error in the cross-appeal, he argues the trial court abused its discretion by awarding Kathleen any temporary or permanent spousal support. He contends that it was error to award spousal support because Kathleen does not need the support.

{¶19} A trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). Therefore, a spousal support award should not be disturbed on appeal, absent an abuse of discretion. *Id*.

{¶20} When determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1) as a whole, and not consider any one factor in isolation. *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). The court need not expressly comment on each factor but must indicate the basis for an award of spousal support in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law. *Id*.

{¶21} The factors enumerated in R.C. 3105.18(C)(1) include consideration of: (1)

the parties' income from all sources, including income derived from the property division made by the court; (2) the relative earning abilities of the parties; (3) their ages and physical, mental, and emotional conditions; (4) their retirement benefits; (5) the duration of the marriage; (6) their standard of living during the marriage; (7) the relative extent of education of the parties; (8) their relative assets and liabilities; (9) the contribution of each party to the education, training, or earning ability of the other party; (10) tax consequences of spousal support, and (11) the lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1).

{¶22} Kathleen argues the trial court abused its discretion because the spousal support award does not equalize the parties' income. She also argues the ten-year term of spousal support is too short in light of the length of the parties' marriage. Thomas contends the trial court should not have awarded any spousal support to Kathleen because she failed to establish any "need" for support, regardless of any of the other factors. Both parties ignore the fact that the court is required to consider all of the relevant factors listed in R.C. 3105.18(C)(1) and that no single factor, by itself, is determinative. *Kaletta* at ¶ 22.

{¶23} Although there is no prohibition against the equalization of incomes in appropriate cases, income equalization is not a factor that must be considered under R.C. 3105.18(C)(1). And while a trial court may consider any factor it considers relevant, a party's "need" is also not one of the enumerated factors set forth in R.C. 3105.18, nor is it the primary standard against which to evaluate the factors. *McConnell v. McConnell*, 8th

Dist. Cuyahoga No. 74974, 2000 Ohio App. LEXIS 347 (Feb. 3, 2000).[1] The goal of spousal support is to reach an equitable result. *Kaletta* at ¶ 22.

**{¶24}** In this case, the trial court separately addressed each of the factors set forth in R.C. 3105.18(C)(1) in relation to the evidence presented at trial. The court found that both Kathleen and Thomas were 54 years old at the time of trial and had been married for 33 years. During the marriage, the parties lived a comfortable upper middle class lifestyle. Despite Kathleen's statements that she suffers from debilitating osteoporosis and liver disease, she presented no medical evidence to substantiate her claim. There was no evidence that either party has any physical, mental, or emotional defects that would prevent either of them from working full time.

**{¶25}** The court noted that Kathleen received the majority of the liquid assets from the division of marital assets, including the $1,100,000 she removed from the Fidelity Account 1935, out of which she used $160,000 to purchase a condominium and returned $92,000 to pay margin calls. She maintained $550,000 in bank accounts. The parties' respective retirement accounts, exclusive of the Fidelity IRAs, were divided equally between the parties but would be unavailable until retirement.

---

[1] In *McConnell*, this court explained that the "need" standard set forth in *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 68-69, 554 N.E.2d 83 (1990), was statutorily replaced by an "appropriate and reasonable" standard delineated in R.C. 3105.18(C)(1), which suggests that "the need factor is not the only barometer" by which a trial court should measure a spousal support award.

{¶26} The court also found that both parties are college graduates, and Thomas obtained his MBA from Case Western Reserve University in 1995. Evidence showed that Kathleen is capable of earning $33,200 as a school teacher and that Thomas's base salary in 2008 was $285,000 per year plus a 10 percent expatriate premium, 10 percent location allowance, housing and other benefits, and bonus income. Although Kathleen was unemployed at the time of trial, the court found she is capable of obtaining employment as a school teacher.

{¶27} Kathleen asserts that Thomas's income in 2008 was approximately $825,474. As such, she argues her spousal support in the amount of $168,000 per year is unequal and inequitable when compared to Thomas's income. Indeed the court found that as of October 31, 2008, Thomas was projected to earn $666,951, consisting of his base salary ($285,000) plus 10 percent expatriate premium ($28,500), plus 10 percent location allowance ($28,500), plus housing and other benefits ($155,397), and bonuses.

{¶28} However, the court also found that there is an inherent variability in Thomas's income because his bonuses, which have contributed substantially to his gross income, are based on company performance. Thomas predicted a dramatic decrease in future bonuses due to the economic downturn, which began in 2008. The court found that such things as the uncertainties of the global economy, the temporary nature of Thomas's current assignment, and the possibility of retirement make Thomas's projected gross income unpredictable.

{¶29} As previously stated, an equitable and reasonable award does not require income equalization nor is it limited solely to a spouse's most basic needs. The court awarded Kathleen spousal support in the amount of $14,000 per month for a period of ten years. This figure is equivalent to $168,000 per year for ten years, or a total of $1,680,000 over the ten-year term. She also received substantial assets and retirement benefits. By the time spousal support payments stop, Kathleen will be eligible to withdraw from her retirement accounts. These assets and income will allow Kathleen to maintain the upper middle class lifestyle she enjoyed during the marriage. The trial court's decision is well supported by the record, and we find no abuse of discretion in the court's spousal support award.

{¶30} Accordingly, Kathleen's first assignment of error and Thomas's second assignment of error in the cross-appeal are overruled.

### Attorney Fees

{¶31} In the second assignment of error, Kathleen argues the trial court abused its discretion when it denied her request for pretrial attorney fees. In her third assignment of error, Kathleen argues the court failed to consider the reasonableness of her attorney fees when it denied her request for pretrial attorney fees. In Thomas's fourth cross-assignment of error, he argues the court abused its discretion by awarding Kathleen $8,000 in attorney fees and not awarding him attorney fees.

{¶32} Kathleen argues the award of attorney fees should have been greater, but the trial court improperly punished her for withdrawing the $1,100,000 from Fidelity Account

1935. She contends the court failed to consider Thomas's lack of cooperation during the pretrial proceedings and asserts that the court would have awarded her pretrial attorney fees if the court had considered the complexity of the issues involved in calculating Thomas's income. Thomas contends the award of spousal support to Kathleen is unwarranted and inequitable.

{¶33} Pursuant to R.C. 3105.73(A), a divorce court "may award all or part of reasonable attorney's fees * * * to either party if the court finds the award equitable." When deciding whether to award attorney fees, the court must start with a presumption that attorney fees are the responsibility of the party who retains the attorney. *Gourash v. Gourash*, 8th Dist. Cuyahoga Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), citing *Farley v. Farley*, 97 Ohio App.3d 351, 358, 646 N.E.2d 875 (8th Dist.1994). In determining whether an award of fees is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.*; R.C. 3105.73(A). An award of attorney fees under R.C. 3105.73 lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985).

{¶34} Despite Kathleen's statements to the contrary, the court never stated that her attorney's time was inflated or unreasonable. Indeed, the court acknowledged that determining Thomas's actual compensation involved complex issues. However, the

court found that Kathleen had substantial resources with which to pay her own attorney fees.

**{¶35}** Moreover, significant attorney fees were incurred as a direct result of Kathleen's acts of "self-help" beyond the withdrawal of the $1,100,000 from Fidelity Account 1935. Much of Thomas's pretrial discovery consisted of efforts to find out what Kathleen did with the $1,100,000. Thomas was forced to file two motions to compel because Kathleen failed to appear for deposition and failed to produce requested documents.

**{¶36}** To make matters worse, Thomas later discovered that Kathleen deposited a large portion of the marital funds into an account in her sister's name. The sister had check-writing authority and used the account to pay for her own as well as Kathleen's expenses. In addition, Kathleen took a margin loan secured against the Fidelity account when she withdrew $1,100,000 which accrued interest in the amount of $2,000 per month. The trial court found that Kathleen's actions created conflict, set the tone for the proceedings, and contributed to the cost of her own attorney fees. Therefore, we find no abuse of discretion in the court's decision to limit her award of attorney fees to those fees incurred during trial.

**{¶37}** Likewise, we find no abuse of discretion in the court's decision to award Kathleen $8,000 for attorney fees incurred during trial where her income from spousal support was less than Thomas's income.

{¶38} We also find no abuse of discretion in the court's denial of Thomas's motion for attorney fees. Although Kathleen failed to comply with discovery, Thomas also failed to cooperate with discovery, causing Kathleen to file a motion to compel and a motion for sanctions and fees.

{¶39} Accordingly, we overrule Kathleen's second and third assignments of error and Thomas's fourth assignment of error in the cross-appeal.

### Retroactive Modification of Temporary Spousal Support

{¶40} In her fourth assignment of error, Kathleen argues the trial court abused its discretion by retroactively modifying the temporary spousal support arrearage. She contends the retroactive modification of temporary spousal support violated her right to due process.

{¶41} The trial court cannot retroactively modify a temporary spousal support award in a final divorce decree in the absence of a motion to modify the temporary spousal support award. *Lewis v. Lewis*, 7th Dist. Jefferson Nos. 06 JE 49 and 07 JE 27, 2008-Ohio-3342, ¶ 72, citing *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, 858 N.E.2d 831, ¶ 41-45 (9th Dist.). This rule comports with due process, which mandates that a party receive adequate notice that a court is considering modification of support as well as opportunity to refute the other's claims. *Halliday v. Halliday*, 8th Dist. Cuyahoga No. 92748, 2009-Ohio-5380, ¶ 23. However, if a motion to modify is filed, a trial court may retroactively modify a temporary spousal support award in a final divorce decree to the date the motion was filed. *Ostmann* at ¶ 45, fn. 11.

{¶42} In this case, Thomas filed a motion for a hearing to challenge the magistrate's temporary spousal support order pursuant to Civ.R. 75(N)(2). Civ.R. 75(N)(2) states, in relevant part: "Upon request, in writing, after any temporary spousal support * * * is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days *to modify* the temporary order." (Emphasis added.) Because Thomas filed a motion to modify the temporary spousal support order and Kathleen had notice and an opportunity to respond to his claims at trial, there was no due process violation.

{¶43} The fourth assignment of error is overruled.

## Lump Sum Payment of Arrearage

{¶44} In the fifth assignment of error, Kathleen argues the trial court erred in not ordering Thomas's temporary spousal support arrearage to be reduced to a lump sum judgment. However, on page 31 of the judgment entry of divorce, the court orders that Thomas "shall pay to Kathleen the sum of Thirty Thousand Dollars ($30,000) as and for temporary spousal support arrearage." The order does not provide for installment payments. Thus, despite Kathleen's statement to the contrary, the judgment entry of divorce ordered Thomas to pay the spousal support arrearage in a lump sum.

{¶45} Therefore, we overrule the fifth assignment of error.

## Thomas's Gross Income

{**¶46**} In the sixth assignment of error, Kathleen argues the trial court abused its discretion by failing to independently review the magistrate's decision on the issue of spousal support as required by Civ.R. 53(D)(4)(d). She contends the court failed to properly consider Thomas's income from all sources because there was no evidence presented to the magistrate regarding the complex issue of Thomas's total compensation. In particular, she argues the court failed to include income from the goods and services adjustment and the hypothetical tax in the total income calculation.

{**¶47**} Civ.R. 53(D)(4)(d) requires the trial judge to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." On appeal, the reviewing court "must presume that a trial court has performed an independent review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 93, quoting *Gilleo v. Gilleo*, 3d Dist. Mercer No. 10-10-07, 2010-Ohio-5191, ¶ 46. "A failure of the trial court to conduct an independent review of the magistrate's recommendations as required by Civ.R. 53(D)(4)(d) is an abuse of discretion." *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, 964 N.E.2d 492, (3d Dist.), ¶ 5.

{**¶48**} When deciding an amount of spousal support, R.C. 3105.18(C)(1)(a) requires that the court consider "[t]he income of the parties, from all sources * * *." This is commonly known as "gross income." In contrast to the child support statute (R.C.

3119.01(C)(7)), R.C. 3105.18(C) does not define the term "gross income." Therefore, we apply its ordinary meaning. *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 17-18.

{¶49} Despite Kathleen's statements to the contrary, both the magistrate's decision and the court's judgment entry of divorce reflect that the court thoroughly evaluated all potential components of Thomas's compensation. The magistrate examined testimony from both parties, Thomas's expert witness, Andrew Finger ("Finger"), as well as numerous exhibits, including Thomas's W-2s for the past several years. Finger testified that payments for the goods and services adjustment and the hypothetical tax are made to employees on expatriate assignments to equalize the employee's salary with its net worth in the United States. Although the goods and services payment appears on the employee's W-2 as income, the payment is intended to compensate for the cost of goods and services in the foreign country, which cost more than the same goods and services cost at home. Finger explained that the purpose of this adjustment is to place the employee in the same position as an employee with the same base salary who is working in the U.S. so that he will be in "no better and no worse" a position as a result of working overseas.

{¶50} The trial court accepted Finger's testimony regarding the goods and services adjustment and the hypothetical tax components of Thomas's income. Based on this evidence, the magistrate found, and the trial court agreed, that the goods and services adjustment and the hypothetical tax do not qualify as income because these components

"only keep [Thomas] in the same position as if he worked in the United States." (Magistrate's decision p. 26.)   Therefore, because the trial court's decision is supported by competent, credible evidence, we find no abuse of discretion in the court's calculation of Thomas's income.

{¶51} The sixth assignment of error is overruled.

## Novelis Subpoena

{¶52} In the seventh assignment of error, Kathleen argues the trial court erred by not compelling Novelis's compliance with a trial subpoena and other discovery.   She contends she was denied judicial process by the failure of subpoenaed witnesses to appear for trial.

{¶53} Civ.R. 45(C)(2)(b), which governs protection of persons subject to subpoenas, provides:

> Subject to division (D)(2) of this rule, a person commanded to produce under divisions (A)(1)(b), (iii), (iv), (v), or (vi) of this rule may, within fourteen days after service of the subpoena or before the time specified for compliance if such time is less than fourteen days after service, serve upon the party or attorney designated in the subpoena written objections to production. If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production. An order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the production commanded.

Thus, if a subpoenaed entity refuses to comply with the subpoena, that party must express all written objections to the party serving the subpoena.   The party that served the subpoena must then file a motion to compel production with "the court by which the

subpoena was issued." *Cincinnati Bar Assn. v. Adjustment Serv. Corp.*, 89 Ohio St.3d 385, 388, 732 N.E.2d 362 (2000). A witness who fails to appear pursuant to a lawfully issued subpoena, may be held in contempt as provided by Civ.R. 45(F) and R.C. 2317.21.

**{¶54}** In *Sharwell v. Leonard*, 8th Dist. Cuyahoga No. 62062, 1992 Ohio App. LEXIS 666 (Feb. 13, 1992), this court held that a party's failure to invoke the trial court's contempt powers thorough a motion to compel waives any error associated with the failure of subpoenaed witnesses to appear for trial. *Id.*, citing *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 476 N.E.2d 388 (8th Dist.1984).

**{¶55}** Kathleen issued a subpoena to Novelis on October 23, 2008, and requested the head of human resources "or other individual able to testify as to compensation and Benefits paid or due to Thomas L. Walpole" appear at trial on November 3, 2008. The subpoena further requested numerous documents and provided Novelis less than seven business days to comply. Novelis's counsel sent a letter to Kathleen's lawyer on October 31, 2008, objecting to the subpoena on grounds that it posed an undue burden. Kathleen's counsel never responded to the objection and never filed a motion to compel Novelis's appearance and thus waived any error associated with the failure of subpoenaed witnesses to appear for trial.

**{¶56}** Therefore, Kathleen's seventh assignment of error is overruled.

### Imputed Income

**{¶57}** The court imputed $33,200 per year of income to Kathleen in the spousal support calculation because there was evidence that Kathleen could earn that much if she

could secure employment. In her eighth assignment of error, Kathleen now contends that the court should not have imputed this income to her because there was no evidence that she would find employment and because both parties had planned to retire in their fifties.

{¶58} When awarding permanent spousal support, R.C. 3105.18(C)(1)(b) directs the court to examine the relative earning ability of the parties, along with all of the other factors set forth therein. A trial court's examination of the relative earning ability of the parties for purposes of spousal support is different from the inquiry employed when a court considers imputation of income for child support. *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 18. Although the inquiries contain some similarities with respect to the evidence the court may consider, the analysis is different.

{¶59} In child support cases, the court examines the earning capacity of a parent who is voluntarily unemployed or underemployed, in order to impute a specific sum of income to that parent that will be combined with other income to arrive at a figure that will be used for the child support calculation. *Id.* When the court examines the relative earning ability of the parties for purposes of spousal support, consideration of earning capacity allows the court to juxtapose one spouse's earning ability against the other spouse's earning ability.

{¶60} Unlike the child support statute, there is no language in R.C. 3105.18 that directs the trial court to "impute" income. The goal is not to arrive at a specific figure to "impute" to one of the spouses. Instead, the end result is to consider and weigh the spouses's relative earning abilities along with all the other factors set forth in R.C.

3105.18(C) in arriving at reasonable spousal support, both as to amount and term. *Id.* at ¶ 19; *see also Johnson v. Johnson,* 9th Dist. Summit No. 24159, 2008-Ohio-4557, ¶ 18 ("[T]here is no underemployment provision in R.C. 3105.18"). As with other spousal support determinations, determining the earning capacity of the parties and the amount of income that should be imputed to him or her, if any, are factual determinations to be made by the trial court based on the circumstances of each particular case. *Id*. at ¶ 67. The trial court's determination of these issues must not be disturbed absent an abuse of discretion. *Id*.

{¶61} Evidence presented at trial supports the trial court's decision to impute income in the amount of $33,200 per year to Kathleen. Thomas's vocational expert, Barbara Burk, testified that based on Kathleen's credentials as well as data from the U.S. Bureau of Labor Statistics and other information specific to North Carolina, Kathleen had the ability to earn between $33,200 and $47,300 teaching kindergarten or elementary school in North Carolina. Kathleen admitted at trial that she would expect to earn $30,000 per year as a teacher in North Carolina and failed to present any evidence that she is physically unable to secure employment as a teacher.

{¶62} Kathleen also asserts that because the parties had planned during the marriage to retire in their fifties, and Thomas has indicated he might retire at the age of 55, it is inequitable to require her to work. However, plans may change when the circumstances require adjustment. The evidence at trial showed that Kathleen is physically and mentally capable of working as a teacher. Therefore, we find no abuse of

discretion in the court's decision to impute income to her in the amount of $33,200.

{¶63} The eighth assignment of error is overruled.

## Mathematical Errors

{¶64} In her ninth assignment of error, Kathleen argues the trial court abused its discretion in computing the net value of Fidelity Account 1935 awarded to Thomas. She argues that the trial court incorrectly set the value at $400,573 rather than $400,753. In her tenth assignment of error, Kathleen argues the trial court abused its discretion in calculating the amount Kathleen owed to Thomas for the hypothetical tax. She contends the amount to be credited to Thomas is $52,296, not $55,296.

{¶65} In both assignments of error, Kathleen asserts that these mathematical errors should be corrected. Thomas effectively concedes these assigned error by failing to respond to them.

{¶66} Therefore, the ninth and tenth assignments of error are sustained.

## $50,000 Wired to Korean Exchange Bank

{¶67} In the eleventh assignment of error, Kathleen argues the magistrate erred by not including the $50,000 Thomas wired to the Korean Exchange Bank when she divided the marital property. She asserts that because the $50,000 was transferred from the parties' joint Fidelity Account 1935 in September 2007, it was marital property and should have been equally divided.

{¶68} However, the trial court determined that Thomas used this money for living expenses in South Korea. Thomas testified that because the South Korean won is highly

variable and wire transfers are expensive, it was his practice to transfer large amounts of money at a time and when the money was depleted, he would make another large transfer. There was evidence that Thomas had previously wired $50,000 to cover living expenses, which corroborated his testimony. Having been used for expenses, it was within the court's discretion to omit the $50,000 from the marital property calculations. *See Mendiola v. Mendiola*, 5th Dist. Stark Nos. 2010 CA 00135 and 2010 CA 00203, 2011-Ohio-1326, ¶ 15-16.

{¶69} Therefore, the eleventh assignment of error is overruled.

### Bonus Money for Expenses

{¶70} In the twelfth assignment of error, Kathleen argues the trial court erred in finding that bonus funds in the amount of $169,554 released to Thomas on September 2, 2008, are not marital property subject to division. She contends that because these funds were earned during the marriage, they are marital property.

{¶71} However, the magistrate found and the trial court agreed that these funds were, in fact, marital property, but that they were not subject to division because they were released to Thomas to pay marital expenses pursuant to an Agreed Judgment Entry dated September 2, 2008. (*See* R. 162.) Therefore, we find no abuse of discretion in the court's decision to exclude the bonus payments of $169,554 to Thomas from the division of marital property.

{¶72} The twelfth assignment of error is overruled.

## Unaccounted Funds

**{¶73}** In the thirteenth assignment of error, Kathleen argues the trial court erred by failing to reimburse her for unaccounted funds. She contends that Thomas siphoned $319,000 from their marital accounts during the period of time between March 2006 and July 2007 and hid them in an undisclosed location.

**{¶74}** However, the magistrate's decision contains a detailed description of the flow of money Thomas withdrew from the parties' marital accounts beginning with the parties' joint account in which Thomas's paychecks were deposited before the divorce was filed. From the evidence, the magistrate was able to trace the money to accounts in different banks and only found $50,000 unaccounted for. (Magistrate's decision p. 9.) The court applied this amount against Thomas's share of the marital assets. Therefore, there was nothing to reimburse to Kathleen.

**{¶75}** Moreover, Kathleen subpoenaed 48 financial institutions in the United States and abroad and failed to uncover any hidden accounts. The court heard the evidence and determined that, with the exception of $50,000, all of the marital funds were accounted for.

**{¶76}** Therefore, the thirteenth assignment of error is overruled.

## Medical Benefits

**{¶77}** In the fourteenth assignment of error, Kathleen argues the trial court abused its discretion in failing to divide Thomas's medical benefits. Her argument suggests that Novelis offered medical and dental benefits in retirement and that the trial court should

have divided those benefits as marital property. However, there is no evidence that Thomas is entitled to any medical benefits upon retirement. Novelis's payment of Thomas's health insurance premiums while he is an employee is not a marital asset subject to division because it is an aspect of his compensation.

{¶78} Therefore, the fourteenth assignment of error is overruled.

### Frequent Flier Miles

{¶79} In the fifteenth assignment of error, Kathleen argues the trial court erred by not providing an alternative division method for frequent flier miles and points in the event they are nontransferable. In *Musser v. Musser,* 10th Dist. Franklin No. 00AP-492, 2000 Ohio App. LEXIS 5059 (Nov. 2, 2000), the court determined a monetary value for one spouse's frequent flier miles and awarded it to the other spouse in the division of marital property. However, in *Musser* the court had evidence upon which to assess the frequent flier miles' monetary value. In this case, Kathleen failed to provide any evidence of the monetary value of Thomas's frequent flier miles.

{¶80} Therefore, the fifteenth assignment of error is overruled.

### Severance and Accrued Vacation Benefits

{¶81} In the sixteenth assignment of error, Kathleen argues the trial court abused its discretion by failing to account for and divide Thomas's severance and accrued unpaid vacation benefits. In support of her argument, Kathleen relies on *McKenzie v. McKenzie*, 2d Dist. Greene No. 2006-CA-34, 2006-Ohio-6841, in which the court divided the husband's severance pay. However, the husband in *McKenzie* was already receiving

the payments as part of an early retirement plan at the time of trial, and there was evidence that he would continue to receive these benefits for the rest of his life. Although Novelis's SEC filings indicate that Thomas may be entitled to some form of severance pay should he be terminated by Novelis without cause or involuntarily cease his employment, these benefits do not vest, if at all, until some time in the future. Therefore, Kathleen was not entitled to any portion of Thomas's potential severance package.

**{¶82}** The sixteenth assignment of error is overruled.

### Support of Adult Children

**{¶83}** In the seventeenth assignment of error, Kathleen argues the trial court erred as a matter of law by forcing her to either support her adult children or gift significant marital assets to her children. She contends that Thomas's transfer of marital funds to the parties' adult children should have counted against his share of the marital assets.

**{¶84}** After the complaint was filed but before trial, Thomas transferred money to accounts for his children who continued to live in Solon while he was in South Korea and their mother was in North Carolina. Thomas testified that he transferred a total of $12,000 to his son, who was 18 years old and attending Cuyahoga Community College to get his GED. He transferred $26,600 to his daughter, who left employment in New York to live in Solon with her brother. The magistrate determined that given the ages of the children and the circumstances of this case, "it was not unreasonable or unforeseeable that the parties' children would require some sort of support" in order to remain in the

family home in Solon.    We agree.

{¶85} Although Kathleen was not obligated by law to support her adult children, the money given to them is insignificant in comparison to the marital estate, and the children were not yet self-supporting.    Therefore, we find no abuse of discretion in the magistrate's conclusion that Kathleen is not entitled to be compensated for sums spent on behalf of the children.

{¶86} The seventeenth assignment of error is overruled.

### Missing and Unvalued Savings Bonds

{¶87} In the eighteenth assignment of error, Kathleen argues the trial court erroneously failed to divide or otherwise account for missing and unvalued savings bonds in Thomas's name.    However, the parties stipulated that Kathleen was in possession of Series EE bonds belonging to the parties, and there is no evidence that any other savings bonds exist.    Therefore, the trial court properly allocated the value of these bonds in the division of marital property.    (Joint Ex. A at 17.)

{¶88} The eighteenth assignment of error is overruled.

### Motion for New Trial

{¶89} In the nineteenth assignment of error, Kathleen argues the trial court abused its discretion when it overruled her motion for a new trial.    Kathleen contends she was entitled to a new trial based on newly discovered evidence that established that Thomas's

actual compensation was higher than that presented at trial.

{¶90} Civ.R. 59(A)(8) states that a new trial may be granted if the moving party presents "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial[.]" To prevail on a motion for a new trial based on the ground of newly discovered evidence:

> it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence.

*Sheen v. Kubiac*, 131 Ohio St. 52, 1 N.E.2d 943 (1936) paragraph three of the syllabus.

{¶91} We review a trial court's judgment on a Civ.R. 59 motion for a new trial for an abuse of discretion. *Sarka v. Love*, 8th Dist. Cuyahoga No. 85960, 2005-Ohio-6362, ¶ 18.

{¶92} Here, Kathleen submitted two documents in support of her motion for new trial, which she argued established that Thomas's income was greater than the amount proved at trial. However, the documents submitted in support of the motion are unauthenticated and the source of the documents is unknown.

{¶93} Moreover, the documents refer to Thomas's employment at Novelis from 2008 though 2011. One of the documents refers to Thomas's new position as Senior Vice President, Global Manufacturing Excellence, and President, Novelis Asia effective April 20, 2011. The other documents list a summary of Thomas's compensation through 2010. The trial concluded in December 2008. Therefore, any information generated

after December 2008 should not be part of the trial record. Furthermore, some of the information includes stock awards and bonus awards that the trial court had already determined were not income for purposes of determining spousal support. Under these circumstances, the court did not abuse its discretion when it denied Kathleen's motion for a new trial.

{¶94} The nineteenth assignment of error is overruled.

**Supplemental Executive Retirement Savings Plan**

{¶95} In the twentieth assignment of error, Kathleen argues the trial court erred by accepting the parties' stipulation that Thomas's Novelis Supplemental Executive Retirement Savings Plan ("SERP") should be equally divided by Qualified Domestic Relations Order ("QDRO"). She contends that because the SERP is non-qualified under ERISA it is not subject to division, and the trial court should have made provisions for either offsetting Kathleen's interest in that plan or otherwise compensate her for her 50 percent share of Thomas's SERP benefits.

{¶96} However, there is no evidence that SERP is a non-qualified plan. Plaintiff's exhibit No. 20, which describes executive compensation at Novelis, lists the benefits of several Novelis executives including Thomas. Although this chart lists "the accumulated benefits of our named executive officers under our defined benefit pension plans (both qualified and non-qualified)," Thomas is listed as only having benefits under the Novelis Pension Plan and SERP. There is no indication that SERP is a non-qualified plan on this chart. Pursuant to the parties' stipulation, the court equally

divided Thomas's benefits under SERP.  Therefore, we find no abuse of discretion with respect to the court's division of Thomas's benefits under SERP.

{¶97} The twentieth assignment of error is overruled.

## Camera and U.S. Mint Coin Collection

{¶98} In the twenty-first assignment of error, Kathleen argues the trial court abused its discretion by failing to value and/or divide the parties' U.S. Mint coin collection and camera, which were in Thomas's possession.  She asserts that Thomas testified that he removed the coin collection and the camera before departing for South Korea.  However, on review the transcript does not support this claim.  Moreover, the parties stipulated that Kathleen had possession of the coin collection and that the parties agreed to divide the collection equally.

{¶99} With respect to the camera allegedly in Thomas's possession, the parties stipulated that the division of household goods and furnishings as it existed at the time of trial represented an equal division of such items.  Therefore, the trial court properly accepted the parties' stipulation as to the equitable division of household items including the camera.

{¶100} The twenty-first assignment of error is overruled.

## Termination Date

{¶101} In the first assignment of error in Thomas's cross-appeal, Thomas argues the trial court's determination that the parties' marriage terminated on the date of the final hearing constitutes plain error.  He also argues the court erroneously used multiple

valuation dates for the parties' bank accounts. He contends the court should have found the date of filing the complaint, October 4, 2007, the de facto date of termination of the parties' marriage.

{¶102} R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is the date of termination of the marriage. *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 40. Courts should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 32. The trial court has broad discretion in choosing the appropriate marriage termination date and this decision should not be disturbed on appeal absent an abuse of discretion. *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶103} In this case, the magistrate found no compelling reason to adopt Thomas's proposed de facto termination date and explained that "using the date of trial does not preclude the use of a different date for valuing a particular asset if, to do otherwise, would work an injustice." Thus, the use of varying dates for valuation of particular assets was intended to fairly distribute assets between the parties. Throughout the magistrate's decision, the magistrate explains her reasons for selecting a particular valuation date. For example, the magistrate explained that it used the filing date as the date of valuing Fidelity Account 1935 because Kathleen removed $1,100,000 from the account at that time. Since the value was much greater at the time the complaint was filed than it was at

the time of trial, this particular valuation date weighed in Thomas's favor.

{¶104} Therefore, because the termination date and the various dates of valuation were clearly intended to achieve equity, we find no abuse of discretion.

{¶105} Thomas's first assignment of error in the cross-appeal is overruled.

## Spousal Support Arrearage [2]

{¶106} In Thomas's third cross-assignment of error, he argues the trial court abused its discretion in finding a temporary spousal support arrearage. He argues that because the spousal support arrearage was intended to compensate Kathleen for marital expenses and Thomas paid the expenses, Kathleen received a double award of spousal support.

{¶107} However, the magistrate's decision indicates that she was aware of the expenses Thomas was paying when she decided on the amount of temporary spousal support. In fact, the magistrate determined that $169,554 in bonus money should not be divided as a marital asset because it was released to Thomas for the payment of the parties' expenses. (Magistrate's decision p. 11). Therefore, the magistrate clearly intended for Thomas to pay the marital expenses as well as the temporary spousal support arrearage. And since the court accounted for Thomas's payment of marital expenses in the division of marital property, we find no abuse of discretion.

---

[2] Thomas's second and fourth cross-assignments of error were previously addressed with Kathleen's assignments of error because they involved the same issues.

{¶108} Thomas's third cross-assignment of error is overruled.

**Separate Property**

{¶109} In Thomas's fifth cross-assignment of error, he argues the trial court erred in finding that Kathleen's bank accounts at Solvay and First Charter Banks were separate property. He argues Kathleen failed to produce sufficient evidence supporting the separate nature of these accounts.

{¶110} The trial court must determine what constitutes marital property and what constitutes separate property, divide the marital property equitably between the parties, and "disburse a spouse's separate property to that spouse." R.C. 3105.171(D). The party seeking to establish an asset as his or her own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property source. *Kehoe v. Kehoe*, 8th Dist. Cuyahoga No. 97357, 2012-Ohio-3357, ¶ 11.

{¶111} At trial, there was evidence that Kathleen's names were on an account at Solvay Bank and on another account at First Charter Bank. However, the evidence suggested, and the magistrate found, that these accounts belonged to Kathleen's father. Kathleen testified that her name was only on the accounts for her father's convenience. Based on this evidence, the court concluded that these accounts were neither marital nor separate property. The magistrate did not disburse these accounts to Kathleen as separate property. Given that the evidence presented at trial supported the finding that the bank accounts at Solvay Bank and first Charter Bank were Kathleen's father's accounts, we find no error in the magistrate's conclusion that they were not marital

property subject to division.

**{¶112}** The fifth assignment of error of Thomas's cross-appeal is overruled.

**{¶113}** The trial court's judgment is affirmed in part and reversed in part. We remand this case to the trial court to correct the mathematical errors set forth in Kathleen's ninth and tenth assignments of error.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the domestic relations division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
MARY EILEEN KILBANE, J., CONCUR